**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 27 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STANLEY BEGAY,

Defendant-Appellant.

No. 97-2127

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CR-96-381-BB)

---

Robert R. Cooper, Albuquerque, New Mexico, for Defendant-Appellant.

Robert J. Gorence, Assistant United States Attorney (John J. Kelly, United States Attorney, and Samuel L. Winder, Assistant United States Attorney, on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **BALDOCK**, **BARRETT**, and **LOGAN**, Circuit Judges.

---

**LOGAN**, Circuit Judge.

---

Defendant Stanley Begay appeals after a jury convicted him on one count of robbery on an Indian reservation in violation of 18 U.S.C. §§ 1153 and 2111, and acquitted him on the related count of assault with an automobile.[1] He argues that (1) the district court abused its discretion by preventing him from impeaching government witnesses regarding their prior convictions, and (2) his due process rights were violated by the prosecutor's misconduct while cross-examining a defense witness.

I

The critical facts supporting the indictment involved defendant, Frank Begay (F.B.) (unrelated), and Rickie Hannah. Hannah loaned a car to F.B. one evening while Hannah, who was ill, rested at the home of F.B.'s mother. F.B. returned the following day with the vehicle and George Etcitty, whom Hannah had not met previously. Hannah agreed to give Etcitty a ride home to Nageezi, New Mexico. En route to Nageezi, Hannah, Etcitty and F.B. stopped at a curio shop where they encountered defendant, whom F.B. and Hannah had never before met. The four left and ultimately picked up Etcitty's mother and stopped at a grocery store. F.B. then drove on to Etcitty's mother's house with her, Etcitty, and defendant also in the car.

Upon arrival Hannah declined an invitation into the Etcitty home because he felt ill. F.B. also remained in the car in the driver's seat. The government's evidence showed

---

[1] The parties stipulated that defendant and the alleged victims were Navajo Indians and the relevant events occurred on the Navajo Reservation in Indian Country.

that while F.B. remained in the driver's seat, someone grabbed him, threw him down, pulled his forehead back, and held a knife to his throat. Hannah had fallen asleep, but awoke when defendant struck his face. Defendant then kicked Hannah, struck him in the face several times, pointed a gun at him, and ordered him from the vehicle. Hannah ran away in fear that defendant would shoot him. F.B. had already exited from the driver's seat and left the immediate area. Hannah testified that defendant then approached him and ordered him back into the car. Etcitty was now in the front passenger seat, so Hannah sat in the back seat. After a short drive, the three encountered F.B. F.B. and Etcitty testified at trial that defendant accelerated the car, hitting F.B., then drove on to a trading post. While Hannah used the restroom, defendant and Etcitty left in Hannah's car.

The following day, while another friend was driving Hannah home, they noticed Hannah's car parked at the trading post. Hannah located the keys and recognized the gun found in the car as the one defendant had pointed at him the previous day.

II

A

Defendant first challenges the district court rulings disallowing cross-examination as to Hannah's prior conviction for marijuana possession and F.B.'s prior rape and burglary convictions. We review decisions to admit or exclude evidence of prior convictions for abuse of discretion. United States v. Linn, 31 F.3d 987, 991 (10th Cir. 1994), and afford substantial deference when the district court has engaged in the

balancing required by Federal Rule of Evidence 609. <u>United States v. Halbert</u>, 668 F.2d 489, 495 (10th Cir. 1991).

Federal Rule of Evidence 609(a)(1) and (2) governs the use of prior conviction evidence for impeachment purposes. It reads:

> **(a) General rule**. For the purpose of attacking the credibility of a witness,
>
> **(1)** evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
>
> **(2)** evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

Rule 403 balancing applies unless the prior crime involves dishonesty or false statements; the time limits in Rule 609(b) may also operate to exclude the prior conviction evidence.

Hannah received probation and a deferred sentence for possession of marijuana, a felony. The defense made no showing of the value of establishing this conviction. The district court found that a conviction for marijuana possession did not relate to dishonesty and had limited probative value as to Hannah's credibility; it concluded the evidence lacked probative value for purposes of cross-examination and would possibly prejudice the jury if admitted. A conviction for drug possession is not necessarily relevant to credibility and is potentially prejudicial in arousing sentiment against a witness. <u>Wilson</u>

v. Union Pacific R.R. Co., 56 F.3d 1226, 1231 (10th Cir. 1995) (civil case; plaintiff as witness). We thus reject defendant's challenge to the ruling on Hannah's conviction.

F.B.'s rape and burglary convictions that the district court also excluded, were nearly ten years old at the time of trial. Federal Rule of Evidence 609(b) generally directs that convictions more than ten years old are not admissible. In excluding this evidence, the district court considered its relevance for impeachment purposes, relying in part on "Teamsters" [sic].[2] The district court concluded that the prior convictions lacked probative value and were not necessarily relevant to F.B.'s credibility.

We have held that a prior robbery conviction is not automatically admissible under Rule 609(a)(2). In Seamster, this court held that a defendant's prior burglary convictions offered as impeaching evidence were not automatically admissible, but that the district court did not abuse its discretion by allowing cross-examination of the defendant regarding those crimes. See United States v. Seamster, 568 F.2d 188, 191 (10th Cir. 1978); see also United States v. Mejia-Alarcon, 995 F.2d 982, 989 (10th Cir. 1993) (same); Christmas v. Sanders, 759 F.2d 1284, 1292 (7th Cir. 1985) (sex crimes not generally relevant to veracity).

---

[2] The district court undoubtedly intended to refer to United States v. Seamster, 568 F.2d 188 (10th Cir. 1978). We reject defendant's argument that the district court ruling was based on nonexistent precedent; the court's inadvertent error in referring to Seamster does not detract from it as binding precedent.

Defendant argues that <u>United States v. Jefferson</u>, 925 F.2d 1242, 1256 (10th Cir. 1995), treats a prior robbery conviction as relevant to credibility. Although <u>Jefferson</u> upheld the admission of such evidence against a testifying defendant by a district court which believed it relevant to credibility, it does not require us to conclude under the facts before us that failure to allow use of the prior convictions of F.B. and Hannah for impeachment was an abuse of the district court's discretion.

Further, F.B.'s testimony did not relate to the robbery count on which defendant was convicted, but only to the assault count for which defendant was acquitted. Allowing F.B. to be impeached with this evidence would not have affected defendant's robbery conviction. Thus, even if the court's ruling was error it was harmless in the circumstances of this case. See <u>Mejia-Alarcon</u>, 995 F.2d at 990-91 (applying harmless error analysis).

B

Defendant raises two related arguments regarding the district court's Rule 609 rulings. He asserts that the district court abused its discretion in allowing Hannah to vouch for F.B.'s credibility while refusing to allow the prior conviction impeachment evidence, and that the Rule 609 evidentiary rulings deprived him of due process under the Fifth and Sixth Amendments.

Federal Rule of Evidence 608(a) allows opinion evidence regarding a witness' credibility after an attack on that witness' credibility. Part of defense counsel's cross-

examination of Hannah was designed to undermine F.B.'s credibility. Defense counsel specifically inquired about Hannah loaning a car to F.B., who did not return the vehicle to Hannah when promised. On redirect the government clarified with Hannah that although F.B. lied about returning the vehicle, Hannah did not consider Frank to be a "liar." II R. 157-58. This type of testimony is of the nature contemplated by Rule 608 and did not amount to improper vouching by a witness of another witness' credibility. Further, F.B.'s credibility was of no consequence to the vehicle robbery conviction.

Defendant also argues that the district court's unfavorable Rule 609 decisions deprived him of due process, because he could not effectively impeach the credibility of F.B. and Hannah. We review limitations on cross-examination of witnesses for abuse of discretion, United States v. Hinkle, 37 F.3d 576, 579 (10th Cir. 1994), and reverse only if any error affected the substantial rights of the accused. United States v. Robinson, 978 F.2d 1554, 1560 (10th Cir. 1992) (reviewing court considers trial record as a whole to determine if error substantially influenced the jury).

Defendant had the opportunity to cross-examine F.B. and Hannah extensively and to challenge their credibility, consistent with his right of confrontation. Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992) (right of confrontation is not unlimited). The court permitted use of a DWI conviction and two incidents in which F.B. lied to law enforcement officers. We believe those prior convictions were of minimal value on cross-examination, especially in light of the jury's acquittal on the assault charge, the only

one to which F.B.'s testimony was relevant.  See United States v. Pedraza, 27 F.3d 1515, 1529 (10th Cir. 1994) (admissibility of evidence is a factor to consider in evaluating whether cross-examination is proper).  We thus reject defendant's constitutional claims.

III

Defendant next argues that the government committed prosecutorial misconduct that denied him a fair trial.  We review the denial of a motion for mistrial on these grounds for abuse of discretion.  United States v. Gabaldon, 91 F.3d 91, 93-94 (10th Cir. 1996).  If prosecutorial misconduct violates a defendant's due process rights by depriving him of a fair trial, we must reverse.  Greer v. Miller, 483 U.S. 756, 765 (1987).  The alleged error, however, must be viewed in the context of the entire case.  Gabaldon, 91 F.3d at 93-94.

Defendant contends that the government's cross-examination of Etcitty led the jury to believe Etcitty lied when he denied observing defendant threaten anyone with a knife, or allowed the jury to speculate that defendant used a knife in another incident and thus was prone to such violence.  The government responds that its questions only addressed defendant's access to a kitchen knife on the day in question and, because the jury acquitted defendant on the assault charge, they either did not credit F.B.'s testimony describing the knife at his throat or dismissed that brief portion of Etcitty's cross-examination as irrelevant to the assault charge.

Facts uncovered during the investigation--but not admitted as evidence at trial--were that shortly after abandoning Hannah's vehicle defendant engaged in an altercation in which defendant cut David Boyd's face with a kitchen knife. Defense counsel obtained agreement from the government not to use that assault at trial.

Defendant used Etcitty as a witness primarily to contradict F.B.'s testimony describing defendant's assault and the absence of a threat by defendant. In cross-examination the government sought to impeach Etcitty's credibility as a defense witness by attempting to reveal inaccuracies or inconsistencies between his testimony and an earlier statement he gave to FBI special agent Stephen Kam. Kam interviewed Etcitty after the robbery, and Kam's interview notes included Etcitty's recollection of the Boyd assault. They stated that "ETCITTY stated that at some point STANLEY BEGAY must have found it [the gun] along with one of his [Etcitty's] mother's kitchen knives inside his mother's residence." Appellant's Opening Brief, Ex. C. The government's cross-examination included inquiry as to Etcitty's reference to his mother's kitchen knives in conjunction with defendant's access to the gun allegedly used in commandeering Hannah's car. The prosecutor specifically asked if Etcitty mentioned kitchen knives to Kam because "that was the knife which Stanley Begay held to the throat of Frank Begay?" III R. 301. Etcitty then denied seeing anyone being threatened.

After reviewing the record as a whole, we hold the district court did not abuse its discretion in denying the motion for a mistrial. Etcitty's speculation about how defendant

obtained a knife was not probative on the issue of robbing Hannah of his vehicle. Faced with relatively weak evidence to support the charge that defendant assaulted F.B. while driving Hannah's vehicle, the prosecutor may have felt compelled to highlight the alleged physical altercation between F.B. and defendant that preceded the charged assault. Only F.B. testified that defendant held a knife to his throat; Hannah only corroborated the assault with the vehicle. An acknowledgment by Etcitty that defendant had access to a knife would support the inference that defendant held a knife to F.B.'s throat. This logical, albeit tenuous, use for that evidence was not improper.

Further, that portion of Etcitty's cross-examination was brief, and at best ambiguous to a jury unaware of the subsequent assault on Boyd. The district court did not abuse its discretion in denying the mistrial.

AFFIRMED.