**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 11 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

vs.

CLAUDIO LUGO, aka Lugo Mano,
Joel Logue-Lugo, Joel Lugo Luke,

     Defendant-Appellant.

No. 98-4020

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 96-CR-271-C)

---

Richard G. McDougall, Assistant United States Attorney, (Paul M. Warner, United States Attorney, Leshia M. Lee-Dixon, Assistant United States Attorney with him on the brief), Salt Lake City, Utah, for Plaintiff-Appellee.

Robert L. Booker, Booker & Associates, (David H. Tolk of Booker & Associates, with him on the brief), Salt Lake City, Utah, for Defendant-Appellant.

---

Before **BRORBY**, **MCWILLIAMS**, and **KELLY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Defendant-Appellant Claudio Lugo appeals his conviction in federal district

court for possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), and re-entry of a deported alien, 8 U.S.C. § 1326. Mr. Lugo appeals, asserting that the district court erred by: (1) denying his right to a speedy trial, in violation of 18 U.S.C. § 3161(c)(1) and the Sixth Amendment to the United States Constitution; (2) denying his motion to suppress evidence obtained as the result of an illegal detention and search of the automobile he was driving; (3) admitting his confession into evidence; (4) admitting evidence of his prior criminal history; and (5) improperly applying a sentencing enhancement pursuant to U.S.S.G. 2L1.2. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

Background

On October 27, 1996, at approximately 12:00 a.m., Trooper Shields of the Utah Highway Patrol was patrolling a section of I-15 in Southern Millard County, Utah, when he observed a vehicle traveling northbound at a high rate of speed. The officer followed the vehicle, which was clocked at a speed of ninety-one miles per hour, learned that the vehicle was registered to Jorge Lopez of Salt Lake City, Utah, and pulled over the vehicle near Fillmore, Utah.

Three individuals were inside the automobile–two males in the front and a female passenger in the back seat. The officer approached the vehicle, informed

the occupants that they were being stopped for speeding, and asked Mr. Lugo, who was the driver, for his license. At this time, the male passenger offered identification and stated that Mr. Lugo did not have a driver's license. After asking Mr. Lugo for identification several times, the officer told him that he would be arrested and taken to jail if he could not produce any identification.

A check of motor vehicle records revealed that there was no record of a driver's license issued to Claudio Lugo in California or Utah and that the vehicle had not been reported stolen. The officer returned to the vehicle and conducted a "pat down" search of Mr. Lugo. Mr. Lugo said that the owner, Jorge Lopez, was his father's cousin. When asked about the whereabouts of Mr. Lopez, Mr. Lugo responded that Mr. Lopez was in Mexico with his father.

During a search of the passenger compartment, the officer found a wallet in the front seat containing $1,600 in cash and no identification. The officer also noticed a strange odor emanating from the vehicle, and suspected it was a masking agent or black tar heroin. The odor was stronger toward the rear of the car. When the officer initially stopped the vehicle and shined his flashlight into the car's interior, he had noted that the floor near the back seat appeared to be altered. While searching the area around the back seat, a compartment was discovered under the carpet. After backup arrived, the officer pulled back the carpet and found several objects wrapped in duct tape within the compartment. At this point,

Mr. Lugo was placed under arrest for possession of a controlled substance. The packages were left wrapped in duct tape, and the vehicle was taken into police custody where a complete search was conducted. The packages were later found to contain cocaine.

At approximately 5:45 a.m., Mr. Lugo was advised of his Miranda rights in English. He advised the officer that he was willing to waive his rights and answer questions. Mr. Lugo admitted that the drugs belonged to him and that he was paid to drive the car with the cocaine between California and Utah.

On November 20, 1996, a federal grand jury indicted Mr. Lugo on the drug and reentry charges described above. On March 25, 1997, Mr. Lugo made his initial appearance in federal court. His arraignment took place on March 28, 1997. Mr. Lugo filed a motion to suppress evidence on April 23, 1997, and an evidentiary hearing on that motion was held on April 25, 1997. A second evidentiary hearing on Mr. Lugo's motion to suppress was held on June 26, 1997 to address issues that had not been raised in the first hearing. The court denied Mr. Lugo's motion to suppress on September 8, 1997.

The government filed notice of a sentencing enhancement on October 20, 1997, and a jury trial commenced on October 21, 1997. On October 22, 1997, the jury found Mr. Lugo guilty on both counts of the indictment. On January 27, 1998, the district court sentenced Mr. Lugo to 120 months in prison and eight

years of supervised release.

Discussion

A. Speedy Trial

Mr. Lugo's first argument on appeal is that he was denied his statutory and constitutional right to a speedy trial. We review de novo the district court's compliance with the requirements of the Speedy Trial Act and the alleged constitutional violation of the right to a speedy trial. See United States v. Gomez, 67 F.3d 1515, 1519 (10th Cir. 1995). We accept the district court's factual findings unless clearly erroneous. See id.

1. Speedy Trial Act

The Speedy Trial Act is designed to protect a defendant's constitutional right to a speedy trial and serve the public interest of adjudicating criminal proceedings promptly. See United States v. Mora, 135 F.3d 1351, 1354 (10th Cir. 1998). The Act requires that a criminal defendant's trial commence within seventy days of the filing of the indictment or from the date the defendant first appears before a judicial officer of the court, whichever is later. See 18 U.S.C. § 3161(c)(1). Certain periods of delay are excluded and do not count as part of the seventy day limit. See 18 U.S.C. § 3161(h)(1)-(9). In addition, "[f]ailure of the

defendant to move for dismissal prior to trial . . . shall constitute waiver of the right to dismissal." 18 U.S.C. § 3162(a)(2).

The government argues that Mr. Lugo waived his right to raise the Speedy Trial Act issue because he never filed a formal motion to dismiss with the district court. On March 28, 1997, at his arraignment, Mr. Lugo indicated that he might file a motion to dismiss on speedy trial grounds and there was some discussion on the issue. The magistrate judge never suggested that Mr. Lugo was relieved of the necessity of formally raising the issue, stating that Mr. Lugo could "go ahead and file [his] motion" if he wished to pursue the matter. On April 1, 1997, Mr. Lugo advised the district court that he had just begun research with respect to the speedy trial issue and again indicated that he might file a motion to dismiss. The court set a briefing schedule in the event Mr. Lugo decided to file such a motion, but a motion was never filed.

We agree that Mr. Lugo failed to file a motion to dismiss on Speedy Trial Act grounds prior to trial and has therefore waived his right to dismissal under 18 U.S.C. § 3162(a)(2). Although this court in United States v. Arnold, 113 F.3d 1146 (10th Cir. 1997), found that raising the issue orally in a chambers conference could constitute a motion as required by 18 U.S.C. § 3162(a)(2), Arnold is distinguishable from the case at bar. In Arnold, when the defendant brought up the Speedy Trial Act issue in chambers conference, the district court explicitly

acknowledged that it would accept the discussion as a formal motion to dismiss. See id. at 1149. In Mr. Lugo's case, however, neither the district nor the magistrate judge ever indicated that any discussion about the Speedy Trial Act issue would be deemed a motion to dismiss as required by 18 U.S.C. § 3162(a)(2); see also Fed. R. Crim P. 12(b). Unlike Arnold, the record reflects that the district court in Mr. Lugo's case indicated that it would consider the motion only after it was properly filed. Thus, Mr. Lugo did not validly raise a Speedy Trial Act claim before trial and has therefore waived the right to dismissal under the plain language of 18 U.S.C. § 3162(a)(2). See Gomez, 67 F.3d at 1520 ("[J]ust as the Act provides a remedy for violation of its speedy trial mandate, so too it unequivocally provides that the failure of a defendant to move for dismissal prior to trial constitutes a waiver of any right to that remedy.").

In any event, Mr. Lugo's arguments fail because his trial took place within the time required by the Speedy Trial Act. In this case, the Speedy Trial Act clock began to run on March 25, 1997, the date of Mr. Lugo's first appearance in federal court. Mr. Lugo's trial did not begin until October 21, 1997, 210 days or approximately seven months after the tolling period began. However, Mr. Lugo filed a motion to suppress on April 1, 1997, which constitutes an excludable delay under the Speedy Trial Act. See 18 U.S.C. § 3161(h)(1)(F); Mora, 135 F.3d at 1355 ("Subsection (h)(1)(F) excludes all time, regardless of reasonableness,

between the filing of the pretrial motion and the hearing thereon, as well as all time following the hearing during which the court awaits the filing of additional materials by the parties that are needed for proper disposition of the motion.") (citing Henderson v. United States, 476 U.S. 321, 326-31 (1986)).  Hearings on Mr. Lugo's motion were held on April 25, 1997, and on June 26, 1997, and the final supplemental brief requested by the district court was filed on August 12, 1997.  Once the court receives all such materials, it has thirty days to decide the matter, which is also excludable.  See 18 U.S.C. § 3161(h)(1)(J); Mora, 135 F.3d at 1355.  Thus, the district court had until September 11, 1997, to decide the motion.  The district court denied the motion to suppress on September 8, 1997, within the thirty-day period.

Mr. Lugo argues that the district court erred by raising *sua sponte* issues for the government which were not pled in the briefs leading to a subsequent evidentiary hearing on the motion to suppress and causing unfair delay.  After the initial hearing on the motion to suppress on April 25, 1997, the district court determined that it needed further briefing and another hearing on whether Mr. Lugo had standing to question the search of the vehicle.  The hearing took place on June 26, 1997, and the additional briefing was not completed until August 12, 1997.

We find that it was within the district court's discretion to request the

additional briefing.  Where parties have not raised an issue, the court ordinarily

should not address that issue *sua sponte*.  See Hardiman v. Reynolds, 971 F.2d

500, 502 (10th Cir. 1992).  However, there are at least two exception to this

general rule.  First, a court should raise a defense *sua sponte* when that defense

implicates that court's subject matter jurisdiction.  See id.  Second, where a

defense implicates important nonjurisdictional concerns that transcend the interests

of the parties, a court may raise the defense *sua sponte*.  See id.  Here, the issue of

whether Mr. Lugo had standing to object, while not implicating the district court's

subject matter jurisdiction, does address substantial nonjurisdictional issues

relevant to the proper disposition of Mr. Lugo's motion to suppress.  Therefore,

we hold that the additional delay was properly excludable.  Deducting the 161 days

of excludable time from the 210 days between arraignment and trial reveals that

Mr. Lugo's trial commenced within forty-nine countable days, well within the

seventy days required by the Speedy Trial Act.


2. Sixth Amendment Right to a Speedy Trial

Mr. Lugo also claims that the delay rises to the level of a constitutional

violation.  In determining whether a defendant has been deprived of his

constitutional right to a speedy trial under the Sixth Amendment, a court should

consider and balance the following factors: (1) the length of the delay; (2) the

reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant.  See Barker v. Wingo, 407 U.S. 514, 530 (1972); United States v. Dirden, 38 F.3d 1131, 1137 (10th Cir. 1994).

The threshold factor to consider is the length of the delay.  We need only inquire into the other factors if the period of delay is "presumptively prejudicial." See Dirden, 38 F.3d at 1137.  Here we find that the delay of approximately seven months, even if not excusable, is not "presumptively prejudicial" and, therefore, a Barker analysis is not necessary.  See Doggett v. United States, 505 U.S. 647, 652 n.1 (1992) ("[T]he lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year."); Dirden, 38 F.3d at 1138 (seven-and-one-half-month delay between arraignment and trial not "presumptively prejudicial"); United States v. Kalady, 941 F.2d 1090, 1095-96 (10th Cir. 1991) (eight-month delay between indictment and trial nonprejudicial); United States v. Bagster, 915 F.2d 607, 611 (10th Cir. 1990) (delay of thirty months insufficient to trigger Barker analysis).  But see Gomez, 67 F.3d at 1521 (twelve-and-one-half-month delay triggered Barker analysis); Perez v. Sullivan, 793 F.2d 249, 255 (10th Cir. 1986) (delay of fifteen months triggered Barker analysis).

In any event, given that the reason for the delay was brought about by Mr. Lugo's motion to suppress, plus the fact that the right to a speedy trial was never

asserted and there has been no showing of prejudice, we conclude that there has been no violation of Mr. Lugo's Sixth Amendment right to a speedy trial.

### B. Denial of Mr. Lugo's Motion to Suppress

Mr. Lugo contends that the district court erred by denying his motion to suppress evidence seized during a warrantless search of the vehicle he was driving. After conducting a suppression hearing, the district court determined that the cocaine found during the search of the vehicle was seized pursuant to a valid automobile search incident to arrest. See New York v. Belton, 453 U.S. 454 (1981). As an alternative basis for its ultimate determination of reasonableness, the district court determined that the search was valid because the cocaine would have been inevitably discovered during a lawful inventory search. See United States v. Haro-Salcedo, 107 F.3d 769, 772 (10th Cir. 1997). Because we agree with the district court's conclusion that the search was proper under the standards set forth in Belton, we need not address the court's alternative basis for its determination.

In reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, and accept the district court's factual findings unless they are clearly erroneous. See United States v. Lacey, 86 F.3d 956, 971 (10th Cir. 1996). However, the ultimate determination of reasonableness

under the Fourth Amendment is a question of law which we review de novo. Id.

In Belton, the Supreme Court held that the police may conduct a contemporaneous warrantless search of a vehicle's passenger compartment incident to a lawful arrest. Belton, 453 U.S. at 460. The Court deliberately created a bright line rule because "[a] single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." Id. at 458 (quoting Dunaway v. New York, 442 U.S. 200, 213-14 (1979)); see United States v. Olguin-Rivera, No. 98-1164, 1999 WL 79378 (10th Cir. 1999). A warrantless search incident to arrest is valid so long as: (1) there existed a legitimate basis for the arrest before the search; and (2) the arrest took place shortly after the search. See United States v. Anchondo, 156 F.3d 1043, 1045 (10th Cir. 1998).

First, we determine whether the officer had a legitimate basis to arrest Mr. Lugo at the time of the search. Here, the officer observed that Mr. Lugo was speeding and operating a vehicle without a valid driver's license. Under Utah law, these offenses are class C misdemeanors, see Utah Code Ann. §§ 41-6-12, 41-6-47, 53-3-202 (1998) & § 53-3-230 (1995), and the officer had the authority to lawfully arrest Mr. Lugo for committing these offenses. See Utah Code Ann. § 77-7-2 (1995). Thus, probable cause and a legitimate basis to arrest Mr. Lugo

existed.

Second, we inquire as to whether the actual arrest was too remote from the search. It is unclear from the record precisely when Mr. Lugo was formally arrested, and whether the search began before the arrest. Mr. Lugo was told that he would be arrested if he did not produce any identification and that he was not free to go. Nevertheless, the record indicates that, at the very latest, the arrest took place shortly after the search was completed. A legitimate "search incident to arrest" need not take place after the arrest. See Anchondo, 156 F.3d at 1045; see also Rawlings v. Kentucky, 448 U.S. 98, 111 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of [defendant's] person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."). Where, as here, the arrest took place shortly after the search, the search is not too remote in time from the arrest to render it invalid. Therefore, Trooper Shields validly discovered the cocaine in the vehicle driven by Mr. Lugo pursuant to a legitimate "search incident to arrest."

## C. Mr. Lugo's Confession

Mr. Lugo alleges that the district court erroneously admitted his confession into evidence, claiming that it was obtained involuntarily. The voluntariness of a confession is a question of law which this court reviews de novo. See Lucero v.

Kerby, 133 F.3d 1299, 1310 (10th Cir.), cert. denied, 118 S. Ct. 1684 (1998).

However, "we accept the district court's underlying factual findings unless they

are clearly erroneous." United States v. Nguyen, 155 F.3d 1219, 1222 (10th Cir.

1998), cert. denied, -- S. Ct. --, 1999 WL 25143 (1999).

During trial and outside the presence of the jury, the district court held an

evidentiary hearing pursuant to 18 U.S.C. § 3501 to determine whether the

statement Mr. Lugo made after his arrest was sufficiently voluntary so as to be

admitted.  After the hearing, the district court found that the statement was

voluntary and ruled that it would be admitted.

We base a determination of voluntariness on the totality of the

circumstances, examining several factors including:  (1) the defendant's age,

intelligence, and education; (2) the length of the detention and interrogation; (3)

the length and nature of the questioning; (4) whether the defendant was advised of

his constitutional rights; and (5) whether the defendant was subjected to or

threatened with any physical punishment.  See Schneckloth v. Bustamonte, 412

U.S. 218, 226 (1973); Nguyen, 155 F.3d at 1222; United States v. Glover, 104

F.3d 1570, 1579 (10th Cir. 1997).  No single factor is determinative.  See Glover,

104 F.3d at 1579.  The court must "'examine the entire record and make an

independent determination of the ultimate issue of voluntariness.'"  Id. (quoting

Davis v. North Carolina, 384 U.S. 737, 741-42 (1966)).  However, a confession is

only involuntary when "the police use coercive activity to undermine the suspect's ability to exercise his free will." United States v. Erving L., 147 F.3d 1240, 1249 (10th Cir. 1998); see Colorado v. Connelly, 479 U.S. 157, 167 (1986).

At the suppression hearing, the court heard testimony from two witnesses, Trooper Shields and Mr. Lugo. Trooper Shields testified that Mr. Lugo made the statement at approximately 5:45 a.m. the day of his arrest, after being given his Miranda warnings in English. According to Trooper Shields, Mr. Lugo indicated that he wanted to talk, waived his right to an attorney, and never asked for an attorney during the conversation. Trooper Shields also testified that Mr. Lugo appeared to understand the Trooper's questions even though the conversation was in English. At the hearing, Mr. Lugo initially testified that he had a ninth grade education from Mexico, and did not understand English well. He stated that he recalled the conversation with Trooper Shields and did not understand what the Trooper was asking him because the conversation was in English. On cross-examination, however, Mr. Lugo stated that he had no recollection of the conversation with Trooper Shields. The district court found, based on the observation of both witnesses, Trooper Shields' testimony to be more credible than Mr. Lugo's. The court particularly noted from Trooper Shields' testimony that Mr. Lugo appeared to understand Trooper Shields because he gave appropriate answers to the questions asked in English.

After an independent review of the record with appropriate deference to the district court's findings of fact, we conclude that the confession was voluntary. Several factors support voluntariness. First, Mr. Lugo was not unusually susceptible to coercion based on age, intelligence and education. While Mr. Lugo's first language is Spanish and he received a ninth grade education, his responses to Trooper Shields' questions demonstrated sufficient understanding of the English language for purposes of the interrogation. Second, Mr. Lugo was not subjected to an unreasonably long detention and interrogation. The delay from 1:00 a.m., when Mr. Lugo was arrested, until 5:45 a.m., when the interview took place, is not presumptively prejudicial, see 18 U.S.C. § 3501(c) (confession not inadmissible solely because of delay if confession made within six hours following arrest or detention); United States v. Short, 947 F.2d 1445, 1450-51 (10th Cir. 1991), and the record does not indicate that the delay had any serious adverse effect on Mr. Lugo. Third, Mr. Lugo was advised of his constitutional rights before making any statement, and waived those rights. Although it would have been preferable to give Mr. Lugo a Miranda warning in Spanish, the record indicates that Mr. Lugo indicated to Trooper Shields that he understood those rights as they were being read to him in English, and responded to all questions in English. Furthermore, the fact that Mr. Lugo's Miranda waiver was oral and not written does not render it invalid. See United States v. Gell-Iren, 146 F.3d 827,

830 (10th Cir. 1998) (upholding the validity of an oral <u>Miranda</u> waiver and finding that the failure to sign a waiver of rights form does not render the waiver involuntary). Finally, Mr. Lugo was neither threatened with nor subjected to any physical punishment.

In light of these facts, we find that Mr. Lugo's will was not overborne and his confession was voluntary. Therefore, the district court did not err in admitting Mr. Lugo's confession at trial.

### D. <u>Prior Criminal History Evidence</u>

Mr. Lugo contends that the district court erred in allowing the government to admit evidence of his prior conviction of attempted possession of a controlled substance. We review evidentiary challenges for an abuse of discretion, <u>see</u> <u>United States v. Begay</u>, 144 F.3d 1336, 1338 (10th Cir. 1998), and uphold the district court's ruling.

While testifying at his trial, Mr. Lugo denied any knowledge of drugs being in the vehicle or that he used drugs. He stated: "With the education that my father gave me not to get involved with drugs, I never did." VII R. at 146. The district court ruled that evidence of Mr. Lugo's 1995 drug conviction was then admissible under Fed. R. Evid. 609 because the prior conviction was relevant to Mr. Lugo's credibility and its probative value outweighed any prejudicial effect. Additionally,

the district court found that the conviction was probative of Mr. Lugo's intent under Fed. R. Evid. 404(b). The court gave the jury a limiting instruction as to the use of this evidence when it ruled on defense counsel's objection, and again at the end of the trial.

Mr. Lugo contends that the requirements of Rule 609 were not met for the admission of this evidence. He also asserts that the district court's alternative application of Rule 404(b) was inappropriate because Mr. Lugo's prior conviction for attempted possession of a controlled substance is totally irrelevant to a jury finding intent for the federal drug charge at issue. Because we agree with the district court's admission of the prior conviction under Rule 609, we will not address the court's alternative basis for its admission under Rule 404(b).

Rule 609 states:

> (a) General rule. For the purpose of attacking the credibility of a witness,
> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and <u>evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused</u> . . . .

Fed. R. Evid. 609 (emphasis added). Mr. Lugo claims that the district court erred in applying Rule 609 because the plain language of Rule 609(a)(1) indicates that it does not apply to the accused. However, Mr. Lugo fails to read the latter part of

Rule 609(a)(1) that clearly states that evidence of a defendant's prior felony conviction will be admitted for impeachment purposes if it survives a balancing of probativeness versus prejudice.

After a thorough review of the record, we are satisfied that the district court did not abuse its discretion in allowing the government to introduce evidence of Mr. Lugo's prior conviction under Rule 609. The court balanced the probative value of the evidence against the prejudicial effect to Mr. Lugo, and determined that the probative value justified admission of the evidence. The prior conviction certainly undercuts Mr. Lugo's claimed lack of involvement with drugs based on the admonitions of his father. We afford the district court substantial deference in its balancing under Rule 609, see Begay, 144 F.3d at 1338, and we find no error in this case. In addition, the district court gave an appropriate limiting instruction to the jury. Therefore, the district court did not abuse its discretion in admitting this evidence under Rule 609.

### E. Sentencing Enhancement

Mr. Lugo's final allegation of error lies in the district court's enhancement of his sentence under U.S.S.G. 2L1.2(b)(1)(A) based on his prior conviction. The enhancement resulted in a sixteen point increase in Mr. Lugo's offense level. Mr. Lugo claims that: (1) the government's notice of enhancement was deficient and

misleading; (2) Mr. Lugo's prior conviction was a misdemeanor under Utah law; and (3) the sixteen level increase was inappropriate because the underlying offense was not an aggravated felony as defined by 8 U.S.C. § 1101(a)(43). We review the district court's interpretation of the sentencing guidelines de novo. See United States v. Cabrera-Sosa, 81 F.3d 998, 999 (10th Cir. 1996).

The day before trial, the government filed a notice of the enhancement pursuant to 21 U.S.C. § 851(a)(1), notifying Mr. Lugo that he may be subjected to increased punishment based on his prior conviction for Attempted Possession of a Controlled Substance, a third degree felony. See I R. doc. 32. Mr. Lugo challenges the adequacy of the information. 21 U.S.C. § 851(a)(1) provides:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

The government filed the information the day before trial, which was timely under the statute. See United States v. Gonzalez-Lerma, 14 F.3d 1479, 1484 (10th Cir. 1994) (holding that "before trial" under § 851 means any time before jury selection begins). Furthermore, we find nothing else about the government's notice to be deficient or misleading.

In 1995, Mr. Lugo was convicted of Attempted Possession of a Controlled Substance, a third degree felony, in the Third Judicial District Court in Salt Lake

- 20 -

City, Utah.  See I R. doc. 52; Utah Code Ann. § 58-37-8(1)(a)(ii) (1998).  On January 27, 1998, at Mr. Lugo's sentencing hearing, the district court found that this offense was a third degree felony.  See VIII R. at 8, 15-16; see also I R. doc. 52; IX R. at 4.  Mr. Lugo claims that this prior conviction was a misdemeanor under Utah law.  This claim, however, is not supported by the record which clearly shows that Mr. Lugo pled guilty to a third degree felony.  See I R. doc. 52; IX R. at 4; Gov't Resp. Exh. B filed Jan. 20, 1998 (Judgment from the 1995 conviction stating that attempted possession of a controlled substance is a third degree felony); see also Utah Code Ann. § 58-37-8(1)(a)(ii) (1998) (Utah statute under which Mr. Lugo was convicted).  Therefore, the district court did not err in finding that Mr. Lugo had pled guilty to attempted possession of a controlled substance with intent to distribute, a third degree felony.  See VIII R. at 15-16.

Mr. Lugo also claims that this offense was not an aggravated felony under 8 U.S.C. § 1101(a)(43).  Section 1101(a)(43)(B) defines an "Aggravated Felony" as "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)."  Mr. Lugo contends that he was not charged with nor did he have any intent to distribute a controlled substance.  We disagree.  First, we have already found that the district court properly determined that Mr. Lugo was convicted of attempted possession with intent to distribute, a third degree felony that on its face indicates

- 21 -

intent. Second, the record reflects that the offense involved "knowingly and intentionally" attempting to distribute cocaine. See Gov't Resp. Exh. A filed Jan. 20, 1998 (Information from conviction); Utah Code Ann. § 58-37-8(1)(a)(ii) (1998). Third, this court has held that a defendant's state court conviction for felony possession of a controlled substance constitutes an aggravated felony within the meaning of § 1101(a)(43). See United States v. Valenzuela-Escalante, 130 F.3d 944, 946-47 (10th Cir. 1997); Cabrera-Sosa, 81 F.3d at 1000 & n.2. Therefore, Mr. Lugo's arguments are without merit.

Accordingly, we find no error in the district court's application of U.S.S.G. 2L1.2(b)(1)(A) to enhance Mr. Lugo's sentence.

AFFIRMED.