**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 22 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MERRILL W. HARWARD,

    Defendant - Appellant.

No. 98-4227

(D.C. No. 96-CR-256-02-B)

(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **McKAY**, and **HENRY**, Circuit Judges.

Defendant-Appellant Merrill W. Harward was convicted following a jury trial on one count of conspiracy to defraud, twenty-three counts of mail fraud, and nineteen counts of wire fraud in violation of 18 U.S.C. §§ 371, 1341, and 1343. The convictions were based on his participation with several co-defendants in a fraudulent telemarketing scheme that operated through a succession of companies. The companies offered financial self-help programs to the public and patient-development services to dentists and orthodontists. On appeal Defendant argues

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

that the district court improperly admitted generalized, conclusory, and speculative testimony regarding Defendant's knowledge about the fraudulent nature of the enterprise. Defendant further contends that the court erroneously enhanced his sentence for his role as an organizer, leader, manager or supervisor in a criminal activity.

We begin with Defendant's challenge to the district court's evidentiary rulings which we review for abuse of discretion. See United States v. Begay, 144 F.3d 1336, 1338 (10th Cir. 1998). Defendant objects to general "conclusionary statements by witnesses as to who [knew] what." Appellant's Br. at 17. Much of the testimony elicited at trial concerned misrepresentations in company materials and the failure to provide promised personal "coaching" or consultation services and guaranteed money-back refunds. Tr., Vol. IV at 682 (found in R., Vol. VI). Defendant contends that testimony that he knew about "the use of fictitious names" on company materials, id., "the particulars of complaints that were presented to the company," id., Vol. VII at 1174 (found in R., Vol. VI), and "the design and purpose of the guarantee" made to investors was speculative. Id., Vol. IV at 691 (found in R., Vol. VI); Vol. VII at 1174 (found in R., Vol. VI). Defendant also objects to testimony of management meeting discussions regarding fraudulent activities because it indicated that Defendant attended those meetings only about "a quarter of the time." Id., Vol. III at 517 (found in R., Vol. III).

Defendant asserts that nothing ties these discussions to the particular meetings when he was present.

The admissibility of evidence is governed by the Federal Rules of Evidence. In general, "[a]ll relevant evidence is admissible." Fed. R. Evid. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would have been without the evidence." Fed. R. Evid. 401. However, "relevant[] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," Fed. R. Evid. 403, and opinion testimony by lay witnesses "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed. R. Evid. 701.

Having reviewed the record, we conclude that the district court did not abuse its discretion in admitting the challenged testimony. Co-defendant Michael Smith, the overall operations manager of the organizations involved in this scheme, testified that he had personal knowledge of the flow of information in the overall organization and of the individuals to whom certain types of information were distributed. See Tr., Vol. VII at 1173 (found in R., Vol. VI). He testified that Defendant was a member of a five-member "management team" and was

"privy to the particulars of complaints that were presented to the company." Id. at 1171, 1174.

Another co-defendant, Richard Allen, testified that Defendant was one of six principals in the businesses and that he was familiar with the duties performed by the individuals employed in the businesses. See id., Vol. IV at 663, 666 (found in R., Vol. VI). He stated that he had "observe[d] Mr. Harward at his duties such as interfacing with Mr. Smith or participating in management meetings," "discuss[ed] with Mr. Harward from time to time his duties such as those relating to the refund committee," and "interface[d] with Mr. Harward personally with respect to his duties as a coach." Id. at 667. Mr. Allen testified that any staff member dealing with complaints and refunds, including Defendant who headed the department that handled disgruntled customers, would be aware of the use of fictitious names. See id. at 682-83. He also testified that Defendant, "who dealt with refunds," would have been aware of the "design and purpose of the [refund] guarantee." Id. at 691.

A third co-defendant, Thomas Pentelute, testified that he attended management meetings during the last six months of his employment. He stated that complaints were discussed at *every* meeting and that Defendant attended about one-quarter of the meetings. See id. at 619; Vol. III at 517 (found in R., Vol. III).

This testimony certainly reveals Defendant's knowledge of the fraudulent scheme. It is relevant, and its probative value is not outweighed by any danger of unfair prejudice. See United States v. Bonds, 12 F.3d 540, 567 (6th Cir. 1993) ("Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence." (citations omitted)). To the extent that it represents opinion testimony, it is based on "first-hand knowledge" and is "helpful in resolving [the] issues." Fed. R. Evid. 701 Advisory Committee Notes. The district court did not abuse its discretion in admitting this testimony.

We turn now to Defendant's argument that there was insufficient evidence to support the district court's finding that he was an organizer, leader, manager, or supervisor under § 3B1.1 of the United States Sentencing Guidelines.[1] We review a district court's factual findings supporting a sentence enhancement for clear error. See United States v. Cruz Camacho, 137 F.3d 1220, 1223 (1998). We give "due deference to the district court's application of the guidelines to the facts," id. at 1224 (quoting 18 U.S.C. § 3742(e)), "reviewing the district court's

---

[1]"To support a conclusion that a defendant is an organizer or leader, a district court must make findings in the record that describe the defendant's exercise of control or decision making authority." United States v. Spears, 197 F.3d 465, 469 (10th Cir. 1999), cert. denied, 120 S. Ct. 1548 (2000). While the district court made specific findings regarding Defendant's knowledge, its findings describing Defendant's control and decision making are less clear. Defendant, however, did not question the adequacy of the district court's findings and has waived that issue. See id.

conclusion that a defendant is a leader or organizer under § 3B1.1(a) for clear error." United States v. Tagore, 158 F.3d 1124, 1130 (10th Cir. 1998).[2]

Section 3B1.1 designates a two-level enhancement for a "defendant [who] was an organizer, leader, manager, or supervisor in any criminal activity other than [more extensive activities detailed in subsections (a) and (b)]." U.S.S.G. § 3B1.1(c). Under the guidelines commentary, "the defendant must have been the organizer, leader, manager, or supervisor of one or more participants" or, if he was not, he must have "exercised management responsibility over the property, assets, or activities of a criminal organization." Id. § 3B1.1, comment. (n.2).

The record indicates that Defendant headed the coaching staff and the refund committee. Mr. Smith identified Defendant as part of the management team, and Mr. Allen testified that Defendant was one of the principals in the business. Having reviewed the record, we conclude that the evidence was sufficient to establish that Defendant exercised management responsibility over the activities of the fraudulent telemarketing scheme.

Because an enhancement under § 3B1.1 can be based on either a defendant's exercise of control over another participant or his management

_____

[2]Precedent in this circuit on the appropriate standard for reviewing the determination that a defendant is a leader or organizer under § 3B1.1 is somewhat confusing. For a discussion of this issue, see Cruz Camacho, 137 F.3d at 1223-24. We follow the decision in Cruz Camacho determining that review for clear error is the appropriate standard. See id.

responsibility, we need not determine whether Defendant exercised control over another participant. The district court did not clearly err in enhancing Defendant's sentence based on his role as an organizer, leader, manager, or supervisor in the criminal activity. The judgment of the district court is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge