**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 10 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

JEFFREY B. JACKSON,

  Defendant - Appellant.

No. 02-3033
D.C. No. 00-CR-20172-CM
(D. Kansas)

ORDER AND JUDGMENT  *

Before **KELLY** , Circuit Judge,   **BRORBY** , Senior Circuit Judge, and
**OBERDORFER** , District  Judge.**

Jeffrey Jackson appeals his conviction for possession of a firearm by a

prohibited person.  He claims that the district court erroneously admitted evidence

adduced on cross-examination of him about the nature of his prior felony

conviction, the existence of which he had stipulated.  We exercise jurisdiction

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

**The Honorable Louis F. Oberdorfer, United States District Judge for the
District of the District of Columbia, sitting by designation.

pursuant to 28 U.S.C. § 1291. Assuming, without deciding, that the district court erred, we are persuaded that the error was harmless. Accordingly, we affirm.

## I. BACKGROUND

On November 21, 2000, police in Kansas City, Kansas, arrested Jackson for a violation of state weapons law, K.S. 21-4202. On December 6, 2000, a federal grand jury charged him in a one-count indictment with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). (R.1.) The indictment alleged that Jackson had been convicted of armed robbery in 1989 in Cook County, Illinois, a felony punishable by a term exceeding one year under the laws of Illinois, and that he had knowingly possessed a firearm, a Star Model 30M 9 mm pistol, on November 21, 2000, in the District of Kansas. (*Id.*)

Jackson's trial began on October 9, 2001. For the trial, Jackson stipulated that on the day of the charged offense, November 21, 2000, he "was a person prohibited from possessing . . . a firearm as [he] had been convicted of a crime punishable by imprisonment for a term exceeding one year," that the firearm at issue had not been manufactured in the state of Kansas (leading to the inference that it had moved in interstate commerce), and that it had been test fired and functioned as intended by its manufacturer. (R.30.) The stipulation did not identify the specific nature or date of Jackson's prior conviction. Accordingly, the only issue left for the government to prove to the jury was that Jackson had

knowingly possessed the firearm on the day in question. (Gov't Opening Statement, Tr. 7.)

The government's main witness was Officer Matt Cross. Unless otherwise noted, his testimony was undisputed. On November 21, 2000, at around nine p.m., Officer Cross and another officer, Steve Owen, were on patrol in Kansas City, Kansas, in a high-crime area, when they observed a car failing to stop at a stop sign. After they pursued and stopped the car, the defendant, Jackson, the passenger in the car, stepped out, threw down a beer bottle, and started running away. Officer Cross pursued him. As they were running through Jersey Creek Park, Officer Cross, who was then about 30 yards behind Jackson, using his flashlight, saw Jackson reach into the right front side of his waistband and throw down a handgun. (Tr. 34.) After Jackson eventually stopped running, Officer Cross approached, placed Jackson under arrest, and searched his person. During the search, Officer Cross discovered and seized an empty "inside the pants" clip-on holster. (Tr. 37-38.) Officer John Hudson arrived at the scene while the search was occurring. He testified that he saw a holster on Jackson's right side waistband. (Tr. 125.) After putting Jackson into Officer Hudson's car, with Officer Hudson and Officer Michael Martin, Officer Cross retraced his route. At the spot where he saw Jackson throw the gun, he found a loaded Star Model 30M .9mm pistol and seized it. (Tr. 41.) He did not know whether the gun, magazine

or ammunition had ever been tested for fingerprints, (Tr. 61-62) but there was no one else out on the streets or in the park where the gun was found, (Tr. 43).

Four post-incident reports were prepared: Officer Cross completed a standard arrest report and an narrative investigative addendum; Officer Martin completed a property report for the gun and ammunition; Officer Hudson completed a criminal investigation report regarding the search of Jackson. In several respects, these reports conflicted with the officers' testimony at trial. Most notably, neither of the reports prepared by Officer Cross mentioned the holster, while the report prepared by Officer Martin stated that the holster had been found in the park. Officer Cross testified that he had simply made mistakes in preparing his reports; Officer Martin testified that he had reported that the holster was found in the park even though he really did not know that and had not consulted with any of the other officers before reporting that fact. Officer Hudson's report, however, corroborated his and Officer Cross's testimony that the holster had been seized during the search of Jackson.

At the close of the government's case, the defense counsel moved for a judgment of acquittal, which was denied. (Tr. 147-48.)

The crux of the defense rested on Jackson's own testimony: he categorically denied that he had possessed either the gun, the holster, or the beer on the night in question. He explained that he had run away after the car stopped

because there were outstanding warrants on him and he didn't want to spend the holidays in jail. (Tr. 180, 184.) He further testified that he had not paid the fines which led to the warrants because he was not able to work after 1997, when he was held up and shot 13 times, with some of the bullets which struck him still lodged in his spine. (Tr. 181-82.) Raford Hunter, the driver of the car, and Andrea Smith, Jackson's live-in girlfriend for the preceding four years, also testified for the defense. Hunter testified that he had not seen Jackson with either a gun, a holster or beer on the night in question, and that, in his opinion, Jackson had none of those items. (Tr. 152, 154, 156, 159-60.) Smith, who had not been with Jackson at all on the night in question, testified that she had never seen Jackson in possession of a firearm. (Tr. 168-72.)

Jackson's decision to testify precipitated the issue which is the focus of this appeal. On cross-examination, the government sought the court's permission to impeach Jackson by asking him about the specific nature of his prior conviction, which was the subject of the stipulation.[1] (Tr. 191.) The district court admitted the evidence, explaining that "[i]n regards to credibility, in regards to this proffer, the court would find that the probative value does outweigh whatever prejudice would be affected on the case." (Tr. 194.)

---

[1]*See Old Chief v. United States*, 519 U.S. 172 (1997) (defendant may stipulate to prior felony conviction and avoid having the specifics of it presented to the jury).

The prosecutor thereupon asked Jackson the following question: "Mr. Jackson, isn't it true that on June 13th of 1989 you were convicted in the state of Illinois of armed robbery?" Jackson answered: "Yes." As a result, the jury learned that Jackson, when he was 23, 12 years earlier, had been convicted of armed robbery.

Jury instructions followed the close of evidence. The district court, at Jackson's request, and over the government's objection, included a limiting instruction that the "nature of the [defendant's] prior conviction is admissible solely for the purpose of evaluating the defendant's credibility, not as substantive evidence of guilt." (R. 28, Instruction 8A.)

During his closing, the prosecutor apparently mentioned Jackson's prior conviction only as stipulated proof that Jackson was a person prohibited from possessing a firearm. (R. 40.) Significantly, he never mentioned that Jackson's prior conviction was for armed robbery, or argued that the conviction or the nature of it should affect the jury's evaluation of Jackson's credibility.

During his closing, defense counsel vigorously attacked the credibility of the police because of the inconsistencies between and within their testimony and between their testimony and their written reports. He emphasized that Jackson's prior conviction did not involve "active steps to dissemble or to lie or to misrepresent or to cheat." (R. 31, at 12.) He asked the jury to consider whether a

1989 conviction for armed robbery really had any bearing on Jackson's credibility or whether the prosecution had brought it up, after the "miserable" performance of the testifying police officers, simply hoping that the jury would rely on it and convict. (*Id*. at 13.) He specifically reiterated the judge's instruction that the jury could not rely on the nature of the prior conviction for any purpose other than evaluating Jackson's credibility.

The prosecutor's rebuttal again made no mention of armed robbery, or the prior conviction. The jury returned a verdict of guilty. The judge sentenced Jackson to confinement for 104 months.

## II. DISCUSSION

We consider first whether the trial court erroneously admitted evidence that Jackson's felony was, in fact, armed robbery, and then, if it was, whether the error was harmless.

### A. Admissibility of Evidence

Federal Rule of Evidence 609(a) provides the governing rule:

(a) General rule. For the purpose of attacking the credibility of a witness,

> (1) . . . evidence that an accused has been convicted of [a crime punishable by death or imprisonment in excess of one year] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused;

-7-

The crux of the dispute in the present case is whether, with respect to Jackson's credibility, the probative value of the fact that Jackson's prior conviction was for armed robbery outweighs its prejudicial effect. We review for abuse of discretion the district court's decision to admit the proof of the nature of the felony for which Jackson was convicted. *See United States v. Lugo*, 170 F.3d 996 (10th Cir. 1999).

There was a risk that the jury, knowing that the prior conviction was for armed robbery, would be more inclined to convict Jackson in the belief that he was a bad person or accustomed to the violent use of arms (very likely firearms) than if they only knew he had committed an unidentified felony. However, if the jury were to treat the armed robbery conviction in this way, it would be disobeying the judge's clear instruction that the evidence of the armed robbery conviction was admissible solely for the purpose of judging credibility and not for determining Jackson's guilt or innocence. The government itself reminds us that in this Circuit, it is firmly established (albeit in a related context) that: "A central assumption of our jurisprudence is that jurors follow the instructions they receive." *United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998) (Brief for United States at 15) (citing Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983)); *see also United States v. Haslip*, 160 F.3d 649, 654 (10th Cir. 1998). *But see United States v. Jimenez*, 214 F.3d 1095, 1099 (9th Cir. 2000) (in a firearm

possession case, district judge, by ordering the prior conviction to be described as a "felony involving a firearm," erroneously "increased the risk that the jury would draw a conclusion that is <u>impermissible in law</u>: because he did it before he must have done it again," despite limiting instruction (internal quotations omitted) (emphasis added)).

Rule 609(a) required the trial judge to weigh the prejudicial impact on the jury of the difference between the stipulation that the defendant committed a felony and the admission that the felony was armed robbery and the probative value of that difference for a jury appraising Jackson's credibility. In order to be probative of Jackson's credibility, the fact that Jackson's prior conviction was for armed robbery must shed greater light on Jackson's character for truthfulness than the fact that he had a prior unidentified felony conviction.

Generally, we would be inclined to defer to the judgment of the trial judge as to the proper balance. He had a first hand sense of the chemistry of the trial, which we do not. He heard the disputed admission – one question and one answer and never withdrew his decision to admit the proof that the felony was armed robbery. More important, he heard the use counsel made of that fact in their closing arguments, their intonations and gestures, including the conspicuous fact that the prosecutor's closing argument did not cite either the felony conviction or its nature to attack Jackson's credibility. And he correctly instructed the jury on

the issue. A theoretical question remains, however, whether, despite the legalities, whether "armed" and "robbery," are such "fighting words" that no interventions could cure their prejudicial effect. However, we conclude that it is unnecessary for us to resolve this contest between legality and theoretical reality. We are satisfied that even if the judge abused his discretion when he permitted the prosecution to inquire about the nature of the conviction and overruled the defense objection to the admission of the response, the result is the same. Even if the judge erred, we are satisfied that the error was harmless, in the circumstances here.

## B.    Harmless Error

A trial court's erroneous "decision whether to admit or exclude evidence, is considered harmless 'unless a substantial right of [a] party is affected.'" *United States v. Charley*, 189 F.3d 1251, 1270 (10th Cir.1999) (quoting Fed.R.Evid. 103(a)). An error affects the substantial rights of a party if it had a "substantial influence on the outcome or leaves one in grave doubt, as to whether it had such effect." *Id*. (internal quotations omitted). When conducting harmless error analysis, we review the record as a whole. *United States v. McVeigh*, 153 F.3d 1166, 1204 (10th Cir.1998).

The defendant contends that knowing that the conviction was for armed robbery was likely to have a serious impact on the jury's deliberations. The

government takes the position that any error was harmless because, in their opinion, the evidence of guilt offered by the prosecution was "substantial" and contradicted only by Jackson's own testimony. They also cite to the limiting instruction, which clearly directed the jury that the conviction evidence was not to be considered as substantive evidence of guilt.

Given the muted attention paid to the prior conviction in the prosecutor's arguments to the jury, the court's mitigating instruction and the effective reiteration of it in the closing defense argument, we have no "grave doubt" that the jurors that convicted Jackson would have also done so if they had never known that the felony committed by him was armed robbery.

As a practical matter, jurors, focused, as they were instructed, on defendant's credibility, may well have been more inclined to believe him, knowing that "his" felony was the confrontational (albeit heinous) crime of armed robbery, than they would have been had they known only that he had been convicted of an unidentified, generalized felony, necessarily including one that involved guile or stealth, such as embezzlement or drug dealing.

The admission established what the felony was. It also established what it was not: It was not one of those felonies, such as drug dealing, which, experience teaches, is prevalent in high crime areas such as the scene of this one

and, more important, generally involves surreptitious concealment and pretense.[2]
Nor was it perjury, embezzlement or fraud, "commission of which involves some
element of untruthfulness, deceit or falsification bearing on the accused's
propensity to testify falsely." See Advisory Committee Note on the 1974
Enactment of Evidence Rule 609(a)(2) (conviction of crimes involving
"dishonesty or false statement" admissible to challenge credibility "regardless of
the punishment"). We conclude that, in the circumstances here, admission of
evidence that Jackson's conviction was for armed robbery, as distinguished from
evidence that he had been convicted of a generalized felony which could have
been perceived by the jury to have been a crime involving drug dealing or one
involving "untruthfulness, deceit or false statement," was not only harmless; it
might even have been marginally protective of the defendant's credibility. Even
if the trial judge erroneously admitted the evidence that the prior felony
conviction was for armed robbery, we have no "grave doubt" that the result would
have been the same if he had excluded it. Accordingly, we AFFIRM the judgment
of conviction.

Entered for the Court

Louis F. Oberdorfer
District Judge

---

[2]*But cf. United States v. Meija-Alarcon*, 995 F.2d 952 (10th Cir. 1993) (drug dealing not a crime involving "dishonesty or false statement within the meaning of Federal Rule of Evidence 609(a)(2)).