Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 13, 2003      Decided December 19, 2003

No. 03-3003

UNITED STATES OF AMERICA,
APPELLEE

v.

MICHAEL A. RILEY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00288–01)

*Cheryl D. Stein*, appointed by the court, argued the cause and filed the brief for appellant.

*John P. Gidez*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, *John R. Fisher, Roy W. McLeese, III*, and *Kristina L. Ament*, Assistant U.S. Attorneys.

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: RANDOLPH and ROBERTS, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: Based on a tip from a longtime informant, District of Columbia police searched Michael Riley and discovered that he possessed a large amount of crack cocaine. Riley was charged with one count of possession with intent to distribute five or more grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). His motion to suppress the evidence having been denied, he entered a conditional guilty plea, reserving the right to appeal the denial of the motion to suppress. That appeal is now before us. We affirm.

\* \* \*

We state the pertinent facts as found by the district court, which control unless "clearly erroneous." On June 5, 2002 Detective Kirk Delpo of the Metropolitan Police Department received a tip from a confidential informant that one Michael Riley was in the area of an apartment in the 1700 block of West Virginia Avenue with a large amount of crack stored in his sock. The informant described Riley's appearance. The informant believed Riley was heading towards his vehicle, a van or limo.

Delpo and fellow officers went to the location and saw a person matching the description, but with a red scooter or moped rather than a van or limo. Because of the discrepancy they staked out a van instead. The informant then phoned again, asking if the police had seen the person, and adding that he was with a red scooter or moped. Delpo and his associates then saw a person matching the earlier description and sitting on a parked moped.

The police approached the person and learned that his name was in fact Michael Riley. They surrounded him and ordered him to dismount from the moped. Delpo testified that he was standing two inches away from Riley and that

Riley could not move without touching him. Tr. 09/23/02 at 62. Another detective was approximately a foot away, and a third officer was standing directly behind Riley. *Id.* at 61–62. Delpo and the officer behind Riley were close enough that Riley couldn't have moved without actually making contact with one or the other. *Id.* at 60, 62. While there is some obscurity in the record as to exactly what followed, it seems clear that by this point a reasonable person in Riley's shoes would have believed he was not free to leave, so that for Fourth Amendment purposes a seizure of some kind had occurred. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

Thereafter Delpo bent down in front of Riley and at some point saw a bulge in his sock. He searched the sock and recovered what later proved to be crack cocaine. Delpo said that Riley was wearing long shorts which left the ankle exposed, and the district court accepted this testimony. Tr. 10/03/02 II at 25. Riley points to contradictory evidence, which he claims shows that Delpo discovered the bulge itself only by searching Riley, and that therefore the district court's acceptance of Delpo's account was clearly erroneous. Because we think it clear that some sort of seizure occurred before these events, whatever *their* exact sequence, we need not resolve the issue. In any event, after the police extracted the contents of the sock, they formally placed Riley under arrest.

The seizure that occurred before the exploration of Riley's sock might be classified either as an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968), requiring only "reasonable suspicion," or as an arrest, requiring probable cause. At the suppression hearing, for reasons that elude us, the government explicitly disavowed any view that the initial seizure was a *Terry* stop. Tr. 10/03/02 I at 8. The stop and associated search can therefore be upheld only if the police had probable cause to arrest Riley at the moment when they converged on the moped.

Given the timing of the stop, the only source of probable cause is the confidential informant's tip and the police's later

confirmation of innocent and more or less contemporaneous details such as Riley's appearance and name. There is no precise formula for the probability required for probable cause. "Somewhere between 'less than evidence which would justify . . . conviction' and 'more than bare suspicion,' probable cause is satisfied. . . . The precise point is indeterminate." *United States v. Prandy–Binett*, 995 F.2d 1069, 1070 (D.C. Cir. 1993) (citation omitted). See also *Draper v. United States*, 358 U.S. 307, 313 (1959). The standard is to be met by applying a "totality-of-the-circumstances analysis." *Illinois v. Gates*, 462 U.S. 213, 234 (1983). The phrase means simply that the court considers all data relevant to the probability of a crime being committed, without having to satisfy the two independent requirements (or proverbial "prongs") of the *Aguilar-Spinelli* test, namely "[1] the informant's 'veracity' or 'reliability' and [2] his 'basis of knowledge.'" *Id.* at 233. *Gates* rejected any such "two-pronged test" "as hypertechnical and divorced from 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Massachusetts v. Upton*, 466 U.S. 727, 732 (1984) (quoting *Gates*). Thus an informant of singular reliability may supply tips amounting to probable cause even though he gives no explicit "indication of the basis for his information." *Gates*, 462 U.S. at 242 (discussing *Draper*).

The informant in this case was particularly reliable. First, his track record was long and error-free. The district court accepted Detective Delpo's testimony that the informant had provided reliable information over 60 times since the start of their relationship in 1995 or even earlier, Tr. 10/03/02 II at 15, and that he (Detective Delpo) knew of no occasion on which the informant had provided false information, *id.*; see also Tr. 09/23/02 at 7. Thus the informant was the very opposite of an anonymous caller of the sort involved in *Gates*. And Delpo had regularly paid the informant for his information. Tr. 09/23/02 at 7–8. In the past we have seen the fact of an informant's being known to the police as supplying "accountability" because the known tipster necessarily risked possible criminal prosecution for giving the police false information. See *United States v. Thompson*, 234 F.3d 725, 729 (D.C. Cir.

2000). Here the tipster was subject to a more readily enforceable sanction: a reduction in the income he obtained from his tipping activity. Although the continual receipt of money for information may make the informant morally unattractive, it supplies him with a sharp incentive to be accurate.

Although police observed behavior confirming information supplied by the informant before stopping Riley (information suggesting that the informant had Riley under real-time observation), none of Riley's behavior appears to have been illicit, and none of the information required advanced knowledge on the part of the informant. The latter would shore up his tip, as accurate prediction would tend to show special access to the plans and activities of the suspect. We have held that a tipster's strong incentives to be truthful, alone, provided "ample" "reasonable suspicion" for a *Terry* stop, *United States v. Clark*, 24 F.3d 299, 302–03 (D.C. Cir. 1994), but in our published decisions on probable cause the police seem always to have had more than a reliable informant and the confirmation of contemporaneous innocent details. See *United States v. Warren*, 42 F.3d 647, 649 (D.C. Cir. 1994) (probable cause provided by a tip from a reliable informant combined with a controlled drug purchase); *United States v. Lincoln*, 992 F.2d 356, 358 (D.C. Cir. 1993) (probable cause provided by a tip from a reliable informant combined with suspicious behavior by the suspects); *United States v. Thomas*, 989 F.2d 1252, 1254 (D.C. Cir. 1993) (search warrant properly issued when reliable tip was combined with controlled drug purchase); *United States v. Chin*, 981 F.2d 1275, 1278 (D.C. Cir. 1992) (probable cause provided by a tip from a reliable informant combined with suspicious behavior by the suspects and conformance to a drug-courier profile).

On the other hand, none of the above cases held that the additional factor was *necessary*; they said only that in combination with the reliable tip it was *sufficient*. Thus our holding here is consistent with, though not compelled by, our precedent. In addition, in an unpublished opinion we found probable cause in a reliable informant's tip, with corroboration limited to contemporaneous innocent details. *United*

*States v. Jones*, 1994 WL 245568 (D.C. Cir. 1994). We distinguished prior cases that rejected comparable tips on the ground that in them the tipster had been anonymous. *Jones* of course has no precedential value, see D.C. Cir. R. 28(c); see also *Slinger Drainage, Inc. v. EPA*, 244 F.3d 967, 968 (D.C. Cir. 2001), but we find some assurance in the fact that a prior panel in fact ruled the same way on very similar circumstances. With all factors being relevant to a unitary inquiry under the "totality-of-the-circumstances analysis," a high degree of reliability makes it unnecessary to demand confirmation of illicit or predictive details.

Given that the police had probable cause to arrest Riley, the search was valid as one incident to arrest. It is of no import that the search came before the actual arrest. In *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980), the Supreme Court held in the context of a search "incident to . . . formal arrest" that "[w]here formal arrest follow[s] quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa." Here the police arrested Riley almost immediately on discovering the cocaine on his person. See Tr. 09/23/02 at 16 ("Q: What did you [Detective Delpo] and the other officers do as a result of [discovering 'chunks of hard white rock matter'] in the defendant's sock? A: He was placed under arrest."). Under these circumstances the exact sequence of events poses no problem.

The judgment of the district court is

*Affirmed.*