Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 23, 2006         Decided June 23, 2006

No. 05-3047

UNITED STATES OF AMERICA,
APPELLEE

v.

RONALD POWELL,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00164-01)

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant.  With  her on the briefs was *A. J. Kramer*, Federal Public Defender.  *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Suzanne C. Nyland*, Assistant U.S. Attorney, argued the cause for appellee.  With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *Roy W. McLeese, III* and *David B. Goodhand*, Assistant U.S. Attorneys.

Before: GINSBURG, *Chief Judge*, and ROGERS, *Circuit Judge,* and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

Dissenting opinion filed by *Chief Judge* GINSBURG.

ROGERS, *Circuit Judge*: The question before the court is whether the exception to the warrant requirement under the Fourth Amendment for a search of the passenger compartment of a car incident to a lawful custodial arrest under *New York v. Belton*, 453 U.S. 454, 460 (1981), applies to a search incident to the possibility of an imminent arrest. We hold that it does not. To come within the exception, the warrantless search cannot precede a custodial arrest; otherwise, neither of the Supreme Court's two historical rationales for the exception would apply. *See Knowles v. Iowa*, 525 U.S. 113, 116-117 (1998). Consequently, although the police had probable cause to arrest Ronald Powell for a misdemeanor committed in their presence, because they instead searched a nearby car before informing Powell that he was under arrest or restraining his movement in a manner that would lead a reasonable person in his position to believe he was under arrest, the search was unlawful. Accordingly, because the police lacked probable cause to search the car, we reverse the judgment of conviction based on the fruits of the unlawful search.

**I.**

On March 2, 2004, at approximately 9:00 p.m., Metropolitan Police Department Officer Bray Jones was driving an unmarked police car with two other officers in Northeast, Washington, D.C.. The officers were in plain clothes, wearing tactical vests bearing the word "police." Officer Jones testified that when they reached the 1700 block of West Virginia Avenue,

they saw two men, one of whom was Ronald Powell, urinating a few feet from the rear of a parked car.  The men were standing in a dark, deserted, industrial non-residential area, which was illuminated only by street lamps.  Two officers approached the men from behind while they were still urinating. Upon turning toward the officers, one of the men said "[W]e were just going to a friend's house . . . .  [W]e had to go, man.  We had to go, man."

While this was occurring, Officer Jones approached the driver's side of the car upon noticing a third man sitting in the front passenger seat.  All of the car doors were closed; only the driver's window was open.  Officer Jones leaned inside the driver's window, his torso entering the car, and shined a flashlight into the car.  He saw two clear cups containing yellowish liquid in the cupholder of an armrest in the front seat and another in an armrest in the back seat.  While leaning inside of the driver's side of the car, Officer Jones smelled alcohol.  Officer Jones moved to the passenger's side of the car and had the passenger get out of the car.  He then searched the interior of the car.  On the back seat, he found a nearly empty bottle of cognac and a backpack.  Upon opening the backpack, Officer Jones found an Intratech TEC-9 machine gun loaded with 23 rounds of ammunition in the magazine and one round in the chamber.  He also found inside the backpack a credit card receipt bearing Powell's name and the certificate of title for the vehicle.

Officer Jones then told the other officers to "hook him up," signaling that the three men were to be handcuffed, which they were. Officer Jones called one of the officers to his location and showed him the backpack, which Jones had put on the trunk so that only the officer could see it.  At that point, the three men started speaking spontaneously, although Officer Jones could not recall what they said.  The men were arrested, according to

Officer Jones, for the firearms violation as well as for urinating in public and possession of an open container of alcohol. The men were read their *Miranda* rights, and in response to questions by one of the officers, Powell said the car and gun were his and that he had the gun for protection. The men were taken to the Fifth District police station where they again were given *Miranda* warnings; Powell refused to answer any questions.

Powell was indicted for unlawful possession of a firearm and ammunition by a felon, in violation of 18 U.S.C. § 922(g)(1). He filed a pretrial motion to suppress physical and oral evidence on four grounds: (1) the police lacked probable cause to believe a misdemeanor was being committed in their presence because it had been completed when the officers arrived on the scene; (2) he was not in the car at the time of any arrest and that any search of the car was not incident to an arrest; (3) Officer Jones's entry into the car constituted a search at its inception and was unsupported by probable cause, and (4) any statements he made were the result of interrogation following an illegal arrest and there were no valid *Miranda* warnings or waiver of his *Miranda* rights. The district court denied the motion. A jury found Powell guilty. The district court sentenced Powell to 46 months' imprisonment, followed by three years supervised release. *See* 18 U.S.C. § 924(a)(2).

**II.**

Powell appeals the judgment of conviction, specifically the denial of his motion to suppress evidence found in the car and his statement in response to police questioning after he was in handcuffs. We review the district court's determinations of questions of law *de novo* and its findings of historical fact for clear error. *See Ornelas v. United States,* 517 U.S. 690, 699 (1996); *United States v. Holmes*, 385 F.3d 786, 789 (D.C. Cir.

2004).

On appeal, the Government makes two concessions that narrow our inquiry. First, the Government acknowledges that the record shows that Officer Jones both saw and smelled the yellowish liquid in the cups only after leaning inside the car through the open window on the driver's side of the car. This is clear from Officer Jones' testimony. Thus, the Government correctly concedes that the district court clearly erred in finding that Officer Jones first saw the yellowish liquid in the cups while he was standing outside the vehicle. Having entered the car without probable cause and conducted, on the basis of what he had seen while inside the car, a complete search of the car interior that revealed the backpack with the gun, Officer Jones could not use the fruits of this unlawful search to justify the search or render it permissible under the Fourth Amendment. *See, e.g.*, *New York v. Class*, 475 U.S. 106, 114-15 (1986); *United States v. Maple*, 348 F.3d 260, 261 (D.C. Cir. 2003). Second, the Government concedes that the search cannot be justified under the Fourth Amendment as incident to the arrest of the car passenger for possessing an open container of alcohol, *see* D.C. Code § 22-1001(d) (2001), because the police only had probable cause to believe this violation had occurred as a result of the unlawful search. Again, this is clear from Officer Jones's testimony. Thus, the only question before the court is whether the Government can justify the otherwise unlawful search of the car because the search was "incident to" Powell's post-search arrest for a misdemeanor and thus use the fruits of the unlawful search to justify Powell's arrest for a felony offense. Although the district court did not reach this question, the Government made the argument in the district court and may seek affirmance of the judgment on an alternate ground. *See United States v. Hylton*, 294 F.3d 130, 136 (D.C. Cir. 2002) (citing *United States v. Garrett*, 720 F.2d 705, 710 (D.C. Cir. 1983)).

The Supreme Court has long recognized an exception to the general warrant requirement under the Fourth Amendment for searches incident to prior lawful custodial arrests. In *United States v. Robinson*, 414 U.S. 218 (1973), the Court acknowledged this court's "comprehensive treatment of the authority of a police officer to search the person of one who *has been validly arrested and taken into custody*," *id*. at 223-224 (emphasis added), in concluding that the police officer's body search (and subsequent container search) of the defendant after he was arrested for driving after revocation of his operator's permit did not "offend the limits imposed by the Fourth Amendment, *id*. at 224. The Court then observed that

> [i]t is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement * * * [that] has historically been formulated into two distinct propositions. The first is that a search may be made of the person of the arrestee by virtue of the lawful arrest. The second is that a search may be made of the area within the control of the arrestee.

*Id*. The Court held that "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Id.* at 235.

In *Belton*, 453 U.S. at 460, the Supreme Court extended this exception, holding that "when a policeman *has made a lawful custodial arrest* of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," *id*. at 460 (emphasis added), including the contents of any containers found therein, *id*. The Court observed that it has identified two historical rationales for the exception: (1) the need "to remove any weapons that [the

arrestee] might seek to use in order to resist arrest or effect his escape," and (2) "the need to prevent the concealment or destruction of evidence [by the arrestee]." *Id*. (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)); *see Robinson*, 414 U.S. at 234. In *Belton*, the defendant, who had been a passenger in a car stopped for speeding, "was the subject of a lawful custodial arrest on a charge of possessing marihuana," *id*. at 462, and "[t]he search of [his] jacket [found in the back seat of the car] followed immediately upon that arrest," *id*. The Court recalled that the exception to the warrant requirement is based on the recognition "that 'the exigencies of the situation' may sometimes make an exemption from the warrant requirement 'imperative.'" *Id*. at 457 (quoting *McDonald v. United States*, 335 U.S. 451, 456 (1948)). It recounted that "a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area," *id*. (citing *Chimel*, 395 U.S. at 763).

Powell contends that neither of the two historical rationales that the Supreme Court has provided for the search-incident-to-arrest exception apply in his case. Although on the facts found by the district court the police had probable cause to arrest Powell for disorderly conduct, unlike the police in *Belton*, the police here did not formally arrest or otherwise detain Powell before searching the car. Powell points out, based on the record before the district court, that the officers had not spoken to him or to the second man who was urinating when Officer Jones began searching the car. Powell therefore maintains that he and the second man had no reason to believe they were under arrest and thus had no reason to resist arrest or to destroy evidence.

The Government urges the court to hold that the existence of probable cause to arrest is alone sufficient for the exception under *Belton* to apply. Relying on *United States v. Riley,* 351

F.3d 1265, 1269 (D.C. Cir. 2003), the Government would have the court extend the *Belton* exception to cases where the police could have initiated a lawful arrest but did not. Extending the exception in that manner would be entirely misplaced.

First, Supreme Court precedent undercuts the notion that authority to arrest, when no arrest occurs, empowers a police officer to conduct a warrantless search of the passenger compartment of a car. *Belton* and its progeny have used the phrase "incident to" to refer to a search that follows a lawful custodial arrest, not vice versa. *See Belton*, 453 U.S. at 460; *Robinson*, 414 U.S. at 223-24. In *Knowles*, 525 U.S. at 118, the Court rejected the argument that a police officer who issued a traffic citation had grounds to search the car merely because the officer could have arrested the driver for the offense for which the officer issued a citation. The choice made by the police officer – to arrest or to issue a citation – determined what action the officer could lawfully take thereafter. The Court's holding that the warrantless search was unlawful was unaffected by the fact that, under the applicable statute, the police officer had probable cause to arrest the driver. *Id.* at 115.

Second, the Government's position would sever the exception from its two historical rationales. In *Knowles*, the Court reaffirmed that the authority to search incident to a prior arrest is an exception to the Fourth Amendment warrant requirement and that its scope is specifically circumscribed by two concerns: officer safety and preservation of evidence. *Id.* The Court explained that until an encounter ripens into an arrest, neither rationale is triggered because "[1] a person might well be less hostile to the police and [2] less likely to take conspicuous immediate steps to destroy incriminating evidence." *Id.* at 117 (quoting *Cupp v. Murphy*, 412 U.S. 291, 296 (1973)). Because there is no reason to fear that the suspect who is issued a citation, in contrast to an "arrestee," will lash out at the police

officer or destroy evidence, the exception does not apply. In *Robinson*, the Court explained that it is the act of arrest that places the officer in physical danger because of the "extended exposure which follows the taking of a suspect into custody and transporting him to the police station," 414 U.S. at 234-35, recognizing that "[t]he danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty, and not from the grounds for arrest," *id.* at 235 n.5. Absent a prior custodial arrest, the danger that the Supreme Court has deemed to necessitate an exception to the warrant requirement is, as a matter of law, non-existent. The Court reaffirmed this reasoning in *Knowles*, 525 U.S. at 117-18. Reversing a conviction based on the fruits of a search of a car incident to a citation and not an arrest, the Court reasoned that "the threat to officer safety from issuing a traffic citation . . . is a good deal less than in the case of a custodial arrest." *Id.* at 117. Further, "[o]nce [the defendant] was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained." *Id.* at 118.

Third, no precedent supports the Government's position that a warrantless search can be justified by a hypothetical arrest that may or may not have occurred had the search turned up no evidence of criminal wrongdoing. Although the defendant in *Rawlings v. Kentucky*, 448 U.S. 98 (1980), which was decided prior to *Belton*, was not placed under "formal arrest" until "quickly" after he was searched, *id.* at 111, "[t]he Court's every word and sentence cannot be read in a vacuum; its pronouncements must be read in light of the holding of the case and to the degree possible, so as to be consistent with the Court's apparent intentions and with other language in the same opinion." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C Cir. 1998) (en banc). The Court in *Rawlings* had to decide whether drug evidence was the fruit of illegal detention and illegal searches. 448 U.S. at 100. The police had come to an

apartment to execute an arrest warrant and although they did not find the man named in the warrant, others in the apartment, including Rawlings, were detained when the police smelled marihuana smoke and saw marihuana seeds on the mantle in a bedroom. *See id*. Rawlings was detained by the police for forty-five minutes while a search warrant for the apartment was obtained and told he could leave only if he consented to a body search. *Id*. When the police returned with a search warrant, Rawlings was read the *Miranda* warnings and told to claim what was his from the contents of a purse belonging to another detainee. When Rawlings claimed the controlled substances, the police searched his person, finding a large amount of cash and a knife, and "placed Rawlings under formal arrest." *Id*. at 101.

Thus, in *Rawlings*, there was a custodial arrest once the police made clear to Rawlings that he was being detained and could not leave the apartment without submitting to a body search. The fact that the police gave him *Miranda* warnings once they returned to the apartment with a search warrant further indicated that the police had placed him under arrest prior to the search. The Court made no reference to *Robinson*. To the extent the Court relied on the fact that the police had probable cause to arrest Rawlings before the search, *see id*. at 111, its rationale does not survive *Belton* and its progeny. *See Knowles*, 525 U.S. at 118.

In *Riley*, the formal announcement of arrest followed a body search after a custodial arrest. Relying on *Rawlings*, this court declared that "[i]t [wa]s of no import that the search [of the suspect] came before the actual arrest." 351 F.3d at 1269 (citing *Rawlings*, 448 U.S. at 111). Again, the court's pronouncement cannot be read in a vacuum. *See Aka*, 156 F.3d at 1291. The police had been alerted by a tip that Riley was carrying a large amount of crack cocaine in his sock. *Id*. at 1266. Upon locating the suspect and confirming his name, three officers surrounded

him, so that he could not move without touching one of them, and ordered him to dismount from a moped. *Id.* at 1267. An officer then leaned down, saw a bulge in Riley's sock, and recovered drugs from the sock. *Id.* The court had to decide whether there was probable cause to support Riley's arrest at the time he was surrounded and ordered to dismount, and, if so, whether the search of his sock, before his formal arrest, was incident to that arrest. *Id.* The Government "expressly disavowed" any view that the police action in surrounding Riley was simply a seizure under *Terry v. Ohio*, 392 U.S. 1 (1968). *See Riley*, 351 F.3d at 1267 Based on the tip and police confirmation of details such as the suspect's appearance and name, the court held there was probable cause for the arrest when the police surrounded Riley, *id*. at 1267-68, and under the circumstances, the fact that "the actual arrest" followed the search of Riley's person was immaterial, *id*. at 1269. The court did not address *Belton* or its progeny. To the extent *Riley* might be read as authority for upholding searches based on the mere existence of probable cause when there is a post-search arrest, such a reading cannot be reconciled with the court's recognition that a lawful arrest had occurred in *Riley* prior to the search, much less with *Belton* and its progeny regarding what exigencies can justify the search-incident-to-arrest exception to the warrant requirement.

Fourth, assuming the sequencing analysis in *Rawlings* and *Riley* for a search of the person would apply to the search of a car, the Government's reliance on *Riley* is misplaced because it ignores, as does our dissenting colleague, *see infra* at 4, the custodial nature of the police conduct that preceded the body search. We agree with the Seventh Circuit that for purposes of the search-incident-to-arrest exception, a "suspect is under custodial arrest when a reasonable person in the suspect's position would have understood that situation to constitute a restraint on freedom of movement of the degree which the law

associates with formal arrest." *Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir. 2003). Certainly, handcuffing a suspect prior to a search, *see* dissent at 4-5, would qualify as a custodial arrest. No such arrest occurred here. Prior to the search of the car, the police neither told Powell that he was under arrest for urinating in public in their presence, nor restrained his movement in a manner that would indicate to a reasonable person in his position that he was not free to leave because he was being detained by the police. At the time of the search, the police were still investigating the situation as they had no prior information about any of the men or the car when they arrived at the scene. Although Officer Jones had removed the passenger from the car, as might be justified by a concern for his safety, *see Knowles*, 525 U.S. at 117-18, the first inkling of an arrest came only with Officer Jones' command after the search, which turned up dangerous contraband, to "hook him up." Even under the dictum in *Riley*, 352 F.3d at 1267, regarding a *Terry* seizure, none had occurred.

In short, neither the Supreme Court nor this court in *Riley* has strayed from the requirement underlying the *exception* to the warrant requirement that the search be incident to a prior lawful custodial arrest. To the extent this court may have attempted to fashion a different rule, *see United States v. Abdul-Saaboor*, 85 F.3d 664, 668 (D.C. Cir. 1996), cited by our dissenting colleague, *infra* at 1, and the dissent attempts to do so today, *see id*. at 4-5 & n.*, and our sister circuits have concluded that the existence of probable cause to arrest is a sufficient substitute for a custodial arrest prior to a search under the *Belton* exception, *see United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004); *United States v. Lugo*, 170 F.3d 996, 1003 (10th Cir. 1999), the Supreme Court rejected that sequencing analysis in *Knowles*.

Fifth, adopting the extension of *Belton*'s bright-line rule that the Government seeks – whereby the police could lawfully

search incident to the possibility of an imminent arrest based on probable cause – would eviscerate the limits placed by the Supreme Court on a carefully circumscribed *exception* to a constitutional right. The police undoubtedly witness numerous occurrences of conduct that they conclude is so trivial that an arrest is unwarranted even though such conduct generates probable cause to arrest. Under the Government's theory, which is embraced by our dissenting colleague (with a qualification regarding a later arrest), *see infra* at 5 n.*, the police would have a blank check to search cars whenever an offense too trivial in their view to justify making a custodial arrest was committed by someone who conceivably could have a connection to a nearby car. But the possibility of an imminent arrest does not present the circumstances that, under *Belton* and its progeny, permit a warrantless search prior to a lawful custodial arrest. The Supreme Court emphasized, in reversing the conviction in *Knowles*, that the search-incident-to-arrest exception it has recognized to address exigent circumstances relating to police safety and securing evidence from interference by the arrestee is tied to two rationales, which are directly linked to the prior initiation of a custodial arrest. If the rationale for the *exception* to the warrant requirement of the Fourth Amendment is absent, because there is no custodial arrest prior to the search, then the exception is inapplicable.

The objective facts known to the police when they arrived in the 1700 block of West Virginia Avenue, N.E., provided probable cause to arrest two men for urinating in public in the presence of the police, D.C. Code § 22-1321; *Scott v. United States*, 878 A.2d 486, 487-88 (D.C. 2005). The police chose not to place Powell and the second man under arrest for disorderly conduct and instead searched the car. As witnesses to the public urination, the police had all the evidence necessary to prosecute that offense, but because they did not place Powell under arrest, under *Belton* and its progeny the police could not lawfully

search the passenger compartment of the car without a warrant, even assuming they had reason to believe that Powell was a recent occupant of the car. *Cf. Knowles*, 525 U.S. at 118. Concern for the officers' safety was addressed when Officer Jones removed the passenger from the car. *See id.* at 117-18. The police had no information prior to conducting the search that the car contained dangerous contraband. *See generally Maple*, 348 F.3d at 263-64 (citing *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)).

We need not address whether the police had sufficient reason to believe that Powell had been a recent occupant of the car at the time Officer Jones searched it. In *Thornton v. United States*, 541 U.S. 615, 620-21 (2005), the Supreme Court recognized, in different circumstances, that an arrestee's recent occupancy of a car was sufficient to justify a search of the passenger compartment after a custodial arrest. The issue is not before us because whatever Powell's apparent connection to the car, his commission of a misdemeanor offense, in the absence of a custodial arrest, was insufficient to justify the search of the car under *Belton*. Absent police conduct that would have indicated to a reasonable man in Powell's position that he was under arrest, neither of the historical rationales provided by the Supreme Court for the search-incident-to-arrest exception is triggered. *See id*. at 621.

Because the police lacked probable cause to search the car, we hold that the district court erred in denying Powell's motion to suppress evidence. Accordingly, we reverse the judgment of conviction based on the fruits obtained as a result of the unlawful search.

GINSBURG, *Chief Judge*, dissenting: The rule in *New York v. Belton*, 453 U.S. 454, 460 (1981), authorizes the police, without a warrant, to search the passenger compartment of an automobile "incident" to a lawful custodial arrest. The Court today redefines this term; now, in order to be deemed "incident," the search must follow an arrest.

Until today our understanding of the rule was that "a search is conducted incident to an arrest so long as it is an 'integral part of a lawful custodial arrest process.' ... The relevant distinction turns not upon the moment of the arrest versus the moment of the search but upon whether the arrest and search are so separated in time or by intervening events that the latter cannot fairly be said to have been incident to the former." *United States v. Abdul-Saboor*, 85 F.3d 664, 668 (D.C. Cir. 1996) (quoting *United States v. Brown*, 671 F.2d 585, 587 (D.C. Cir. 1982)).

More important, in *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980), the Supreme Court specifically said it is not "particularly important that the search preceded the arrest rather than vice versa" where "the formal arrest followed quickly on the heels of the challenged search" and "the police clearly had probable cause to place [the suspect] under arrest" before the search. That is exactly what happened here. *See also United States v. Riley*, 351 F.3d 1265, 1269 (D.C. Cir. 2003) (where "the police had probable cause to arrest" before the search it was "of no import that the search came before the actual arrest"); *United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004) ("So long as an arrest that follows a search is supported by probable cause independent of the fruits of the search, the precise timing of the search is not critical"); *United States v. Lugo*, 170 F.3d 996, 1003 (10th Cir. 1999) ("A legitimate 'search incident to arrest' need not take place after the arrest") (citation omitted). Of the three other circuits to address the issue only one has held a *Belton* search must follow a custodial arrest and that case failed to mention *Rawlings*. *See Ochana v. Flores*, 347 F.3d 266, 270

(7th Cir. 2003).

Applying the teaching of the Supreme Court in *Rawlings* to the facts of this case, I believe we must uphold Officer Jones' search of the car. As the Court acknowledges, Ct. Op. at 13, the officers had probable cause to arrest Powell and his companion before the search and without regard to the fruits of that search. *See* D.C. Code §§ 22-3312.01, 22-3312.04(a); *Scott v. United States*, 878 A.2d 486, 488 (D.C. 2005). Indeed, Officer Jones testified that the officers "detain[ed]" the men because "they were going to be placed under arrest" for "[u]rinating in public." Immediately following the search, Powell and his companion were indeed handcuffed and formally placed under arrest for public urination as well as for the firearms violation brought to light by the search. As in *Rawlings*, "the formal arrest followed quickly on the heels of the challenged search." 448 U.S. at 111. Therefore, because "the police had probable cause to arrest [before the search], the search was valid as one incident to arrest." *Riley*, 351 F.3d at 1269.

The Court gives a novel reading to *Rawlings* and *Riley* and I believe errs in concluding they do not control this case because of "the custodial nature of the police conduct that preceded" the search in those cases. Ct. Op. at 11. Noting that a custodial arrest takes place "when a reasonable person in the suspect's position would have understood that situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest," *id.* at 11-12 (quoting *Ochana*, 347 F.3d at 270), the Court apparently reads *Riley* to mean a search must always follow a custodial arrest and may precede only "the formal announcement of arrest." *Id.* at 10. In cases involving a search incident to arrest neither we nor the Supreme Court have previously parsed the distinction between "custodial" and "formal" arrests, but the Supreme Court did at least advert to such a distinction in *Rawlings*, 448 U.S. at 111 (a search may

lawfully precede an arrest so long as a "formal arrest follow[s] quickly on [its] heels"), and the taxonomy is, of course, familiar from the *Miranda* line of cases, *see, e.g.*, *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) ("It is settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest. If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." (internal quotation marks and citations omitted)).

It is possible, but ultimately of no moment, that the suspects in *Riley* and *Rawlings* were under "custodial" but not "formal" arrest when they were searched. In *Riley*, police officers ordered Riley to dismount his moped and searched his sock only after three of the officers had surrounded him in such a way that he "couldn't have moved without actually making contact with" one of them. *Riley*, 351 F.3d at 1267. The court noted the seizure (of Riley's person) that preceded the search might have been deemed an investigative stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 20 (1968), but for reasons that "elude[d]" the court, the Government conceded the initial seizure was not a *Terry* stop. 351 F.3d at 1267. The court therefore treated the encounter as an "arrest" as of the moment the officers "converged on the moped." *Id.* In *Rawlings,* the suspect was "detained" at the residence he was visiting and not permitted, unless he would consent to a body search, to leave for the 45 minutes it took the police to obtain a search warrant. 448 U.S. at 100. After the officers returned with the warrant, Rawlings admitted ownership of drugs found in another guest's purse. *Id.* at 100-01. Having established probable cause to arrest Rawlings, the officers first searched him and then placed him under arrest. *Id.* at 101. The Supreme Court expressly reserved the question whether the temporary detention of the occupants

of the house was a lawful seizure that was "less intrusive than a traditional arrest," *id.* at 110 & n.5, *i.e.* something less than a custodial arrest, but assumed for the sake of argument it was an "illegal detention," *id.* at 106.

Whether the suspects in *Riley* and *Rawlings* were under custodial arrest when they were searched, however, is of no moment. Neither the Supreme Court in *Rawlings* nor this court in *Riley* suggested its upholding the search turned upon the suspect being in custody before the search. Instead, the Supreme Court in *Rawlings* said only that the "formal arrest" must follow "quickly on the heels of the challenged search," *id.* at 111, -- as happened here -- and this court in *Riley* held it was "of no import that the search came before the actual arrest" if the "actual arrest" followed quickly thereafter, 351 F.3d at 1269, -- again, as happened here.

The Court nonetheless seems to find implicit in these decisions the requirement that the search follow the custodial arrest because to hold otherwise would "sever" the search-incident-to-arrest exception to the warrant requirement "from its two historical rationales" -- protection of the officer's safety and preservation of evidence -- which are not "triggered" until "an encounter ripens into an arrest," that is, the suspect is taken into custody. Ct. Op. at 8. But that is not correct. If anything, each rationale is stronger before the police take a suspect into custody than afterwards, and certainly more so than after the suspect has been taken into custody, handcuffed, and locked away in the back seat of a squad car. *See, e.g.*, *Thornton v. United States*, 541 U.S. 615, 618 (2004) (upholding search under *Belton* where officer "handcuffed petitioner, informed him that he was under arrest, and placed him in the back seat of the patrol car" before searching the vehicle); s*ee also id.* at 627-28 (Scalia, J., concurring) (noting cases upholding search after suspect is handcuffed and secured in back of squad car "are legion" and

mordantly criticizing application of *Belton* to suspects who no longer pose a danger to police).  By searching the suspect before they arrest him, the officers can secure any weapon he might otherwise have used to resist arrest or any evidence he might otherwise have destroyed if he got the opportunity.

Nor, contrary to the opinion for the Court, is the search in this case inconsistent with *Knowles v. Iowa*, 525 U.S. 113 (1998).  Had the officers failed to arrest Powell and merely issued him a citation, then under *Knowles* the search would be invalid.  525 U.S. at 117 ("The threat to officer safety from issuing a traffic citation ... is a good deal less than in the case of a custodial arrest").  It is neither the Government's position nor mine that "probable cause to arrest is alone sufficient for the exception under *Belton* to apply."  *See* Ct. Op. at 7, 12.  It is the "fact of the arrest" that makes all the difference.  *Id.* (quoting *United States v. Robinson*, 414 U.S. 218, 234 n.5 (1973) ("The danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty")); *see also Washington v. Chrisman*, 455 U.S. 1, 7 (1982) ("Every arrest must be presumed to present a risk of danger to the arresting officer").  Therefore, a search may be "incident" to an arrest regardless of the order in which the police proceed.[*]

Because I believe the search in this case was "incident to arrest" as the Supreme Court has explicated that phrase, I would go on to the question whether the officers had reason to believe

---

[*]This is not, however, as the Court suggests, a "blank check" for the police to search the car whenever a driver has committed an arrestable offense.  Ct. Op. at 13.  The police must still complete the arrest, thereby subjecting themselves to a time-consuming procedure and to "the extended exposure" to danger inherent in "the taking of a suspect into custody and transporting him to the police station." *Knowles*, 525 U.S. at 117 (quoting *Robinson*, 414 U.S. at 234-35).

Powell was a "recent occupant" of the vehicle. *See Thornton*, 541 U.S. at 622 ("*Belton* allows police to search the passenger compartment of a vehicle incident to a lawful custodial arrest of both 'occupants' and 'recent occupants'" (quoting *Belton*, 453 U.S. at 460)). I believe they did. The only reasonable conclusion, upon finding two men urinating at night in an industrial area a "few feet" from a car, the only occupant of which was sitting in a passenger seat, is that the two men were recent occupants of the car. Accordingly, I would uphold the conviction.

I respectfully dissent.