Opinion for the Court filed by Chief Judge GINSBURG.
Dissenting opinion filed by Circuit Judge ROGERS.
GINSBURG, Chief Judge.
Ronald T. Powell challenged the district court’s order denying his motion to suppress evidence of the gun and ammunition found in the back seat of his car. A jury convicted Powell of being a felon in possession of the gun and ammunition, in violation of 18 U.S.C. § 922(g)(1). Powell appealed the district court’s order and a divided panel of this court reversed his conviction as having been based upon the fruits of an unlawful search. The panel majority reasoned that even when the police have probable cause to arrest a suspect, they may not conduct a warrantless search incident to arrest before taking the suspect into custody. See United States v. Powell, 451 F.3d 862, 863 (D.C.Cir.2006).
Upon the Government’s motion, the full court vacated that decision and granted rehearing en banc. Concluding this case is controlled by Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), we now affirm the order of the district court and hold the search of Powell’s car was conducted incident to Powell’s arrest. Accordingly, unlike the panel, we go on to consider whether the officers had reason to believe Powell was a “recent occupant” of the vehicle and conclude they did, wherefore the search was lawful.
I. Background
One evening at approximately 9:00 p.m. three Metropolitan Police officers were riding in an unmarked police car in the vicinity of 1700 West Virginia Avenue, NE, an industrial area, when they saw Powell and another man standing and urinating to the rear of and a “few feet” from a parked car. The officers “pulled [their] vehicle toward” the men and came to a stop. Officers Masalona and Trudy got out and walked toward the two men while Officer Jones, who had seen a third person sitting in the front passenger seat, approached the driver’s side of the car. As the officers approached, one of the men outside the car said, “[W]e were just going to a friend’s house and we had to go, man. We had to go.”
Officers Masalona and Trudy detained the two men outside the ear because “they were going to be placed under arrest” for urinating in public. Meanwhile, Officer Jones leant through the open window on the driver’s side of the vehicle and shined his flashlight inside the car, where he saw three clear cups containing a yellowish liquid, two in the cupholders of an armrest in the front seat and one in an armrest in the back seat. Based upon the smell, Officer Jones concluded the liquid was “alcoholic ... in nature.” Upon cross-examination Officer Jones conceded that “a portion” of his “head and ... upper body” were inside the vehicle when he first saw the cups.
Officer Jones directed the passenger to get out of the car with the intention of arresting him for possession of an open container of alcohol in a vehicle upon a public way. See D.C.Code § 25-1001(a)(2) (2001). He then searched the vehicle and found on the back seat a capped cognac bottle with a “small portion” of cognac inside and a backpack. Inside the backpack he found an Intertech 9 semi-automatic pistol with 23 rounds in the magazine and one round in the chamber, as well as a certificate of title for the vehicle and a credit card receipt, both in the name of Ronald Powell. Upon finding the gun, Officer Jones said to Officer Masalona, *838 “[H]ook him up,” which was the officers’ signal “that something serious is happening right now” and the suspects should be “placed in handcuffs.” The men were taken into custody and variously charged with a firearms violation, possession of an open container of alcohol, and urinating in public.
A grand jury indicted Powell on a single count of being a felon in possession of a firearm and of ammunition, in violation of 18 U.S.C. § 922(g)(1). Powell moved to suppress the physical evidence found in his car as the fruits of an unlawful search. The Government opposed on the ground that, because the police had probable cause to arrest the two men for urinating in public and probable cause to arrest the occupant of the vehicle for possession of an open container of alcohol, the search of the car was conducted incident to an arrest and therefore was lawful under New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).
At the hearing on Powell’s motion the prosecutor represented that Officer Jones had seen and smelled the alcohol before he leant his head into the vehicle. Defense counsel contended Powell had neither seen nor smelled the alcohol until after he had “physically” entered the vehicle “with his body.” The district court upheld the search on the ground that Officer Jones had seen the cups of yellowish liquid in the beam of his flashlight before he leant into the vehicle. This conclusion was directly contrary to Officer Jones’s testimony, as the Government has since conceded in its brief for this appeal. Officer Jones’s search, and his consequent discovery of the gun and ammunition in the backpack, therefore cannot be justified on the ground that the open containers of alcohol were in plain view; “a search not justified when it is begun cannot be used to elicit evidence with which to justify the search after the fact.” United States v. Spinner, 475 F.3d 356, 359 n. * (D.C.Cir.2007) (citations omitted). The search of the car can be justified, if at all, only if it was incident to the arrest of Powell and the other man for urinating in public.
Powell was convicted by a jury and sentenced to 46 months in prison, to be followed by three years of supervised release. He appealed and a divided panel of this Court reversed the district court’s order denying Powell’s motion to suppress, holding the police may not conduct a warrant-less search of the passenger compartment of a car incident to arrest “before informing [an occupant of the car] that he was under arrest or restraining his movement in a manner that would lead a reasonable person in his position to believe he was under arrest.” Powell, 451 F.3d at 864. The full court vacated the panel’s decision in order to consider whether “the search of the car was lawfully conducted as a search incident to Powell’s arrest.”
II. Analysis
Powell argues the search was unlawful because he “had no reason to believe he was being arrested at the time of the search” and the “search incident to arrest” exception to the warrant requirement of the Fourth Amendment to the Constitution of the United States does not apply to a search conducted prior either to the announcement of a formal arrest or to the suspect being taken into custody. We reject that view because we believe this case is controlled by Rawlings.
A. Rawlings
In Rawlings the Supreme Court held the police may search a suspect whom they have probable cause to arrest if the “formal arrest follow[s] quickly on the heels of the challenged search,” 448 U.S. at 111, 100 S.Ct. 2556. The Court was quite clear in stating that, assuming such proximity in *839 time, it is not “particularly important that the search preceded the arrest rather than vice versa.” Id. This court applied the Supreme Court’s clear teaching in United States v. Riley, 351 F.3d 1265, 1269 (D.C.Cir.2003) (where “police had probable cause to arrest” before search, it was “of no import that the search came before the actual arrest”). So, too, did the Ninth Circuit in United States v. Smith, 389 F.3d 944, 951 (9th Cir.2004) (“So long as an arrest that follows a search is supported by probable cause independent of the fruits of the search, the precise timing of the search is not critical” (citations omitted)), and the Tenth Circuit in United States v. Lugo, 170 F.3d 996, 1003 (10th Cir.1999) (“A legitimate ‘search incident to arrest’ need not take place after the arrest” (citation omitted)). Indeed, every circuit that has considered the question— save one — has concluded that a search incident to arrest may precede the arrest. See, e.g., United States v. Bizier, 111 F.3d 214, 217 (1st Cir.1997); United States v. Donaldson, 793 F.2d 498, 503 (2d Cir.1986); United States v. Currence, 446 F.3d 554, 557 (4th Cir.2006); United States v. Hernandez, 825 F.2d 846, 852 (5th Cir.1987); United States v. Montgomery, 377 F.3d 582, 588 (6th Cir.2004); United States v. Ilazi, 730 F.2d 1120, 1126-27 (8th Cir.1984); Smith, 389 F.3d at 951; Lugo, 170 F.3d at 1003; United States v. Banshee, 91 F.3d 99, 102 (11th Cir.1996). Only the Seventh Circuit has held that a Belton search may not precede a custodial arrest, but it did so in an opinion that, like the briefs then before it, betrayed no awareness of the Supreme Court’s holding in Rawlings. See Ochana v. Flores, 347 F.3d 266, 270 (7th Cir.2003).
Applying the teaching of Rawlings to the facts of this case, we must uphold Officer Jones’s search of the car. Powell acknowledges the officers had probable cause to arrest him and his companion for urinating in public before they searched his car. See D.C.Code § 22-1321 (2001); Scott v. United States, 878 A.2d 486, 488 (D.C.2005). Indeed, Officer Jones testified that the officers “detain[ed]” the two men because “they were going to be placed under arrest” for “[u]rinating in public.” Immediately following the search, the two were indeed handcuffed and formally placed under arrest for public urination as well as for the firearms violation brought to light by the search. As in Rawlings, that is, “the formal arrest followed quickly on the heels of the challenged search.” 448 U.S. at 111, 100 S.Ct. 2556. Therefore, as in Riley, because “the police had probable cause to arrest [before the search], the search was valid as one incident to arrest.” 351 F.3d at 1269.
B. Custodial Arrest Versus Formal Arrest
Powell argues that Rawlings applies only in cases where the challenged search was preceded by a custodial arrest. Noting, as did the Seventh Circuit in Ochana, that a custodial arrest takes place “when a reasonable person in the suspect’s position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest,” 347 F.3d at 270, Powell apparently reads our decision in Riley to mean that a search may precede “the formal announcement of arrest” if and only if it follows the functionally more important custodial arrest.
In cases involving a search incident to arrest neither we nor the Supreme Court have previously expanded upon the distinction between a “custodial” and a “formal” arrest, but the Supreme Court did at least advert to such a distinction in Rawlings, 448 U.S. at 111, 100 S.Ct. 2556 (search may lawfully precede arrest so long as “formal arrest follow[s] quickly on [its] heels”), and the taxonomy is, of course, *840 familiar from the Miranda line of cases, see, e.g., Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (“[T]he safeguards prescribed by Miranda become applicable as soon as a suspect’s freedom of action is curtailed to a degree associated with formal arrest. If a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him ‘in custody’ for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda.” (internal quotation marks and citations omitted)).
Powell argues- — and it is possible, though ultimately inconsequential — that the suspects in Rawlings and Riley were under “custodial” but not “formal” arrest when they were searched. In Riley police officers ordered the suspect to dismount his moped and searched his sock only after they had surrounded him in such a way that he “couldn’t have moved without actually making contact with” one of them. Riley, 351 F.3d at 1267. The court noted the seizure (of the suspect’s person) that preceded the search might have been deemed an investigative stop pursuant to Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), but for some reason that “elude[d]” the court, the Government conceded the initial seizure was not a Terry stop. 351 F.3d at 1267. The court accordingly treated the encounter as an “arrest” from the moment the officers “converged on the moped.” Id. The suspect was therefore under custodial arrest, or so the argument goes, before the challenged search took place.
In Rawlings, the suspect was “detained” at the residence he was visiting and, unless he would consent to a body search, was not permitted to leave for the 45 minutes it took the police to obtain a search warrant. 448 U.S. at 100, 100 S.Ct. 2556. When an officer returned with the warrant, Rawl-ings admitted the drugs found in another guest’s purse were his. Id. at 100-01, 100 S.Ct. 2556. Having thus obtained probable cause to arrest Rawlings, the officers first searched him and then placed him under arrest. Id. at 101, 100 S.Ct. 2556. The Supreme Court expressly reserved the question whether the temporary detention of the occupants of the house was a lawful seizure that was “less intrusive than a traditional arrest,” id. at 110 & n. 5, 100 S.Ct. 2556, that is, something less than a custodial arrest, but the Court assumed for the sake of the argument it was an “illegal detention,” id. at 106, 100 S.Ct. 2556.
Whether the suspects in Rawlings and Riley were under custodial arrest when they were searched, however, is of no moment. Neither the Supreme Court in Rawlings nor this court in Riley suggested the lawfulness of the search turned upon the suspect being in custody before he was searched. On the contrary, the Supreme Court in Rawlings said that the “formal arrest” may follow “quickly on the heels of the challenged search,” id. at 111, 100 S.Ct. 2556, and this court in Riley similarly held it was “of no import that the search came before the actual arrest” because the “actual arrest” followed quickly after the search, 351 F.3d at 1269 — exactly as happened in this case.
Powell and our dissenting colleague nonetheless seem to find implicit in these decisions the requirement that the search follow the custodial arrest because to hold otherwise would sever the search-incident-to-arrest exception to the warrant requirement from its two historical rationales— namely, protection of the officer’s safety and the preservation of evidence, see, e.g., Belton, 453 U.S. at 457, 101 S.Ct. 2860— which are not triggered until an encounter ripens into an arrest, that is, until the suspect is taken into custody. But that is not correct. If anything, both concerns *841 are greater before the police have taken a suspect into custody than they are thereafter. See, e.g., Thornton v. United States, 541 U.S. 615, 618, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (upholding search under Belton where officer “handcuffed petitioner, informed him that he was under arrest, and placed him in the back seat of the patrol car” before searching his vehicle); cf. id. at 627-28, 124 S.Ct. 2127 (Sca-lia, J., concurring in judgment) (noting cases upholding search after suspect is handcuffed and secured in back of squad car “are legion” and mordantly criticizing application of Belton to suspects who no longer pose a danger to police). By searching the suspect before they arrest him, the officers can secure any weapon he might otherwise use to resist arrest or any evidence he might otherwise destroy.
In this case the presence of another person in the searched vehicle illustrates the need for police who have probable cause to make an arrest in some circumstances, in the interest of safety, to conduct a search before making the arrest. Here the police approached two suspects in proximity to a probable associate who, for all they knew, had access to a weapon. Cf. Maryland v. Buie, 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (holding that, incident to an arrest in a home, officers may “as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched”).
Powell and our dissenting colleague also contend our decision is inconsistent with Knowles v. Iowa, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998) (holding an officer may not conduct a search incident to arrest when, although the officer has probable cause to make an arrest, he issues a citation instead of arresting the suspect). But that is not correct either. Had the officers failed to arrest Powell and merely issued him a citation, then indeed the search would be invalid under Knowles. 525 U.S. at 117, 119 S.Ct. 484 (“The threat to officer safety from issuing a traffic citation ... is a good deal less than in the case of a custodial arrest”). That, of course, is not what happened, and we do not say that having probable cause to arrest is by itself sufficient to bring a search within the Belton exception to the warrant requirement. Rather, it is the “fact of the arrest” that makes all the difference. Id. (quoting United States v. Robinson, 414 U.S. 218, 234 n. 5, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (“The danger to the police officer flows from the fact of the arrest, and its attendant proximity, stress, and uncertainty”)); see also Washington v. Chrisman, 455 U.S. 1, 7, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982) (“Every arrest must be presumed to present a risk of danger to the arresting officer”). As we have recently noted: “The key point in Knowles ... was not that the officer had a lawful ground for arrest upon which he did not rely, but that he did not arrest the defendant at all.” United States v. Bookhardt, 277 F.3d 558, 566 (D.C.Cir.2002).
Two additional considerations impel our conclusion that Rawlings controls this case. The first is the Supreme Court’s teaching that in this area of the law bright-line rules are necessary. See, e.g., Thornton v. United States, 541 U.S. at 623, 124 S.Ct. 2127 (“need for a clear rule ... justifies the sort of generalization which Belton enunciated”). The second is that, even if Knowles could be taken by implication to call Rawlings into question, we are not at liberty to disregard the Supreme Court’s straightforward statement that it is not “particularly important that the search preceded the arrest rather than vice versa,” 448 U.S. at 111, 100 S.Ct. 2556. See Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, *842 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (“If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions”).
C. Recent Occwpant/Thomton
Because we conclude the search in this case was “incident to [an] arrest,” as the Supreme Court has explicated that phrase, we must go on to answer the question whether the officers had reason to believe Powell or his companion was a “recent occupant” of the vehicle. See Thornton, 541 U.S. at 622, 124 S.Ct. 2127 (“Belton allows police to search the passenger compartment of a vehicle incident to a lawful custodial arrest of both ‘occupants’ and ‘recent occupants’ ” (quoting Belton, 453 U.S. at 460, 101 S.Ct. 2860)). We conclude they did. Although Officer Jones testified he did not “know” Powell or the other man was a recent occupant, a reasonable police officer would have had good reason to believe as much: indeed, the only reasonable inference, upon finding two men urinating at night in an industrial area a “few feet” from a car, the only occupant of which was sitting in a passenger seat, is that the two men were recent occupants of the car.
III. Conclusion
Because the search of the car was a lawful search incident to Powell’s arrest for urinating in public and the officers had reason to believe Powell was a “recent occupant” of the vehicle, the district court properly denied Powell’s motion to suppress. The judgment of conviction is therefore

Affirmed.